120 P.3d 593 (2005)
Heike WERLINGER, individually and as parent and guardian of Kayleigh Marion Werlinger, a minor; Tobin Walter Werlinger, a minor; and Brandy Marissa Werlinger, a minor, and the Estate of Dean Werlinger, Appellants,
v.
CLARENDON NATIONAL INSURANCE COMPANY, a corporation doing business in the State of Washington, Respondent.
No. 55009-8-I.
Court of Appeals of Washington, Division 1.
August 22, 2005.
Publication Ordered September 29, 2005.
*594 Martin D. Fox, John Gorell, Seattle, WA, for Appellants.
Scott M. Collins, Cole Lether Wathen & Leid PC, Seattle, WA, for Respondent.
BAKER, J.
¶ 1 Dean Werlinger died at the scene of a vehicle accident caused by Michael Warner. The Werlinger estate sued Warner for wrongful death. Warner was protected from personal liability due to a discharge in bankruptcy, but the bankruptcy court permitted the Werlingers to sue Warner for the $25,000 limits of his automobile insurance policy with Clarendon National Insurance Company. The Werlingers, as Warner's assignees, sued Clarendon for bad faith after Clarendon contested coverage and delayed tendering the policy limits. The Werlingers appeal the superior court's order granting summary judgment in favor of Clarendon. Because Warner suffered no harm as a result of Clarendon's actions, we affirm.

I.
¶ 2 The fatal accident occurred while Warner was driving his wife's uninsured vehicle. Warner's personal vehicle was insured by Clarendon, but was in the shop for repairs on the day of the accident. His insurance policy indicated that any auto, which he did not own, that he used as a temporary substitute while his vehicle was out of normal use for repair was a "covered auto" under the policy.
¶ 3 Before the accident, Warner and his wife filed a Chapter 13 bankruptcy proceeding. After the accident, the Warners converted their bankruptcy to Chapter 7 in order to avoid personal liability. The Werlinger estate secured relief from the automatic bankruptcy stay for the limited purpose of pursuing Warner's automobile insurance, and sued the Warners for wrongful death in July 2001. The Warners were granted a discharge in bankruptcy.
¶ 4 Clarendon maintained that the policy definitions and exclusions created a question as to whether Warner's policy covered the Werlingers' losses and reserved its right to deny coverage. It defended Warner in the wrongful death action under a reservation of rights.
¶ 5 In August 2001, Clarendon filed a declaratory judgment action against the Warners. In October, the Werlingers sent Clarendon a letter demanding payment of Warner's policy limits within 60 days. Clarendon did not respond to the Werlingers' letter.
¶ 6 In March 2002, Clarendon filed a motion for summary judgment in the declaratory judgment action. The court granted the Werlingers' cross-motion for summary judgment, finding coverage for Warner. Clarendon tendered the policy limits of $25,000 soon thereafter. The Werlingers rejected the tender and proceeded with the litigation in the wrongful death action.
¶ 7 The Warners and the Werlingers entered a settlement agreement dated November 2002. In exchange for the Warners settling for $5 million, the Werlingers agreed not to hold the Warners personally liable. The parties agreed to a judicial determination *595 of whether the settlement was reasonable.
¶ 8 The superior court concluded that the settlement was unreasonable because the Warners were not exposed to any personal liability due to their discharge in the Chapter 7 bankruptcy.[1] On appeal, we concluded that the court did not abuse its discretion.[2] We explained that the court properly considered the Warners' Chapter 7 bankruptcy status, and noted that Clarendon's alleged wrongful conduct in denying coverage did not cause the Warners' bankruptcy.[3]
¶ 9 The Werlingers, as Warner's assignees, filed a bad faith lawsuit against Clarendon. The action alleged bad faith and violation of the Consumer Protection Act[4] (CPA). On motions for summary judgment, the court ruled in favor of Clarendon because there was no injury to Mike Warner or his marital community. It denied the Werlingers' subsequent motion for reconsideration.

II.
¶ 10 We review an order on a motion for summary judgment de novo.[5] "To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was `unreasonable, frivolous or unfounded.'"[6] The insured may not base a bad faith or CPA claim on an insurer's good faith mistake, which occurs when the insurer acts honestly, bases its decision on adequate information, and does not overemphasize its own interest.[7] Just as any other tort, the insured must prove duty, breach of duty, and damages proximately caused by any breach of duty.[8] Harm to the insured is an essential element of every bad faith or CPA claim.[9]
¶ 11 Whether the insurer acted in bad faith is a question of fact.[10] An insurer is therefore entitled to a dismissal on summary judgment if, after viewing the facts in the insured's favor, a reasonable person could only conclude that its actions were reasonable.[11] Alternatively, because harm is an essential element, summary judgment in favor of the insured is appropriate if a reasonable person could only conclude that the insured suffered no harm.
¶ 12 The trial court based its order granting Clarendon summary judgment on the issue of harm. It explained that the question before it concerned whether there was evidence of injury to Mike Warner and his marital property from any alleged act of bad faith by Clarendon. The court concluded that, due to Warner's bankruptcy status, at no time was he subjected to greater liability because of Clarendon's alleged delay in resolving the issue of coverage. It also noted that the Werlingers presented no competent evidence of other injury.
¶ 13 We agree. The Warners suffered no harm as a result of Clarendon's actions. They were shielded from personal liability by their Chapter 7 bankruptcy status. The Werlingers argue, however, that the Warners were harmed by Clarendon's bad faith because they dismissed their Chapter 13 bankruptcy and filed Chapter 7 as a direct result of a letter Warner received from Clarendon, which indicated that his insurance policy may not afford coverage. But the evidence does not show that the Warners' decision to file *596 Chapter 7 was in response to Clarendon's letter. Rather, the Warners' depositions indicate that they filed Chapter 7 because of the accident, the loss of the car, and to pay off all of their other bills.
¶ 14 The Werlingers maintain that the Warners suffered emotional distress as a result of Clarendon's bad faith. Because bad faith is a tort, a plaintiff may seek emotional damages.[12] But there is no competent evidence that the Warners suffered emotional distress as a result of Clarendon's actions. The Werlingers point to evidence that the Warners were emotionally distressed by the accident, but Clarendon did not cause the accident.
¶ 15 The Werlingers argue that there is a presumption of harm once an insured establishes that the insurer acted in bad faith. Although this is true, the presumption of harm is rebuttable.[13] Clarendon established that there was no harm.
¶ 16 It is not necessary for us to decide whether Clarendon acted in bad faith. But we note that it was reasonable for Clarendon to dispute coverage based on the policy definitions and exclusions, Clarendon fulfilled its duty to defend Warner under a reservation of rights, and it sought a timely coverage resolution. Thus, no presumption of harm arose.
¶ 17 Because harm is an essential element of both a bad faith and CPA claim, and there is no evidence that the Warners suffered harm, the Werlingers cannot prevail as a matter of law.
¶ 18 AFFIRMED.
WE CONCUR: SCHINDLER, J., and ELLINGTON, A.C.J.
NOTES
[1] Werlinger v. Warner, 126 Wash.App. 342, 344, 109 P.3d 22 (2005).
[2] Werlinger, 126 Wash.App. at 351-52, 109 P.3d 22.
[3] Werlinger, 126 Wash.App. at 351, 109 P.3d 22.
[4] Ch. 19.86 RCW.
[5] Smith v. Safeco Ins. Co., 150 Wash.2d 478, 483, 78 P.3d 1274 (2003).
[6] Smith, 150 Wash.2d at 484, 78 P.3d 1274 (quoting Overton v. Consol. Ins. Co., 145 Wash.2d 417, 433, 38 P.3d 322 (2002)). See also Griffin v. Allstate Ins. Co., 108 Wash.App. 133, 143, 29 P.3d 777, 36 P.3d 552 (2001).
[7] Griffin, 108 Wash.App. at 143-44, 29 P.3d 777 (citing Coventry Assocs. v. Am. States Ins. Co., 136 Wash.2d 269, 280, 961 P.2d 933 (1998)).
[8] Smith, 150 Wash.2d at 485, 78 P.3d 1274.
[9] Safeco Ins. Co. of Am. v. Butler, 118 Wash.2d 383, 389, 823 P.2d 499 (1992); Griffin, 108 Wash.App. at 147, 29 P.3d 777.
[10] Smith, 150 Wash.2d at 484, 78 P.3d 1274.
[11] Smith, 150 Wash.2d at 484-86, 78 P.3d 1274.
[12] Anderson v. State Farm Mut. Ins. Co., 101 Wash.App. 323, 333, 2 P.3d 1029 (2000).
[13] Butler, 118 Wash.2d at 391, 823 P.2d 499.