# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| MUTUAL OF ENUMCLAW INSURANCE COMPANY, | ) ) ) | No. 75633-8-I |
| Appellant/Cross Respondent, | ) ) | |
| v. | ) ) | |
| MYONG SUK DAY, | ) ) ) ) | ORDER DENYING DAY'S MOTION, FOR RECONSIDERATION, GRANTING MOE'S MOTION FOR RECONSIDERATION |
| Respondent/Cross Appellant. | ) ) ) | IN PART, AND WITHDRAWING AND REPLACING OPINION |

Appellant and respondent have each filed motions for reconsideration of the court's December 12, 2016 opinion and each have filed answers. The panel has considered the motions and answers and determined that Day's motion should be denied, that MOE's motion should be granted in part, and the opinion should be amended as follows:

Page 2, last paragraph, delete the phrase "and attorney fees awarded by the trial court" at the end of the first sentence.

Page 6, delete the last sentence in the second paragraph and replace it with "The trial court authorized the entry of a supplemental judgment for attorney fees to Day, but no supplemental judgment has been entered."

Page 17, delete the last sentence in the first paragraph.

Page 17, delete the word "also" in the second paragraph.

Page 17, change the first sentence of the second paragraph to read "We affirm the judgment in favor of Day for $300,000 for emotional distress damages and the $600,000 of multiplied damages under IFCA awarded by the court." Add a footnote at the end of that sentence which reads, "On reconsideration in this court, the parties debate whether a supplemental judgment may yet be entered for Day's attorney fees in the trial court. Because this question was not meaningfully addressed in the parties' briefs, we express no opinion."

Now therefore, it is hereby

ORDERED that Day's motion for reconsideration is denied. It is further

ORDERED that MOE's motion for reconsideration is granted in part and changes are made to the opinion as outlined above. It is further

ORDERED that the December 12, 2016 opinion be withdrawn and replaced with a revised opinion reflecting the changes herein.

Done this 6th day of January 2017.

_____

_____
Mann, J.

_____
Appelwick, C

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2017 FEB -6 AM 9:29

| | | |
|---|---|---|
| MUTUAL OF ENUMCLAW INSURANCE COMPANY, | ) ) ) | No. 75633-8-I |
| Appellant/Cross Respondent, | ) ) ) | |
| v. | ) ) ) | |
| MYONG SUK DAY, | ) ) | PUBLISHED OPINION |
| Respondent/Cross Appellant. | ) ) ) | FILED: February 6, 2017 |

VERELLEN, C.J. — Instead of a more traditional covenant judgment, Myong Suk Day gave agreed judgments to tort victims William Lee and Dawn Smith but retained her claims against her insurer, Mutual of Enumclaw (MOE). Day assigned only her claims against an independent agent. Lee and Smith agreed not to execute against any of Day's assets except her claims against the agent. Lee and Smith also agreed to fully satisfy their agreed judgments against Day once the assigned claim against the agent was resolved.

In a more traditional covenant judgment, the insured gives the tort victim an agreed judgment and assigns her claims against her own insurer in exchange for the tort victim's covenant not to execute on any asset of the insured except the insured's claims against her insurer. If the insurer has engaged in bad faith while defending the tort victim's personal injury claim under a reservation of rights, then the tort victim

pursuing the assigned bad faith claim against the insurer is entitled to a rebuttable presumption of harm and coverage by estoppel. If the settlement is reasonable, then the amount of the agreed judgment is the tort victim's presumptive recovery on the assigned bad faith claim. The covenant judgment is not a release of the tort victim's claims against the insured. But if the insured is legally insulated from any exposure to the tort victim, then the presumption of harm is rebutted, precluding any coverage by estoppel.

Here, the trial court concluded that a presumption of harm supported coverage by estoppel, resulting in a judgment for Day against MOE in the amount of the tort victims' agreed judgments against Day.

Because Day's right to full satisfaction of the agreed judgments is unrelated to the resolution of any claims (retained or assigned) against Day's insurer, Day is legally insulated from any exposure on the agreed judgments. Even assuming a presumption of harm applies, the presumption would be rebutted by Day's absolute right to a full satisfaction of the agreed judgments. There is no coverage by estoppel. We reverse the judgment in favor of Day based on coverage by estoppel.

We also affirm the trial court's denial of Day's claim to reform the insurance contract.

We affirm the judgment in favor of Day for the $300,000 emotional distress damages awarded by the jury, together with the IFCA[1] multiplier. We also award Day her reasonable attorney fees on appeal on the issues she has prevailed upon.

---

[1] Insurance Fair Conduct Act, ch. 48.30 RCW.

2

FACTS

In May 2008, a teenager purchased alcohol at Day's grocery store and shared it with his underage friends. The teenagers raced through Point Defiance Park and injured two pedestrians, William Lee and Dawn Smith, who sued Day in 2009.

Day contacted her independent insurance agent, Michael Huh. Day met Huh when she purchased the grocery store in 2003. Although Day and Huh have different versions of their November 2003 meeting and whether Day asked for liquor liability coverage, it is undisputed that the insurance contract did not provide for liquor liability coverage. Subsequent automatic annual policy renewals occurred without any coverage review. All renewed policies lacked liquor liability coverage.

Day claims Huh told her she had insurance that covered the lawsuit and that she should contact her insurer, MOE. Huh tendered the claim to MOE for Day. MOE instructed Day "to contact her personal attorney."[2] The MOE claims adjustor had no explanation why MOE did not interview Day about the coverage issue or ask Day what she had discussed with Huh or why she thought she had liquor liability coverage. MOE did not tell Day that Huh claimed she had declined liquor liability coverage.

MOE notified Day that it would appoint an attorney to defend her, but because she did not have liquor liability coverage in her contract, MOE would defend under a reservation of rights. MOE also informed Day that it might bring a declaratory judgment action to determine its obligations under the policy.[3]

---

[2] Report of Proceedings (RP) (Nov. 19, 2014) at 88.

[3] See Clerk's Papers (CP) at 144 ("This reservation of rights includes the right to file an action for declaratory relief in a Washington court seeking a determination of Mutual of Enumclaw's obligations under the policy with respect to plaintiffs' claims.")

3

MOE filed a declaratory judgment action (the coverage case) to determine its obligation to defend or indemnify Day for Lee and Smith's personal injury claims. In her answer, Day sought reformation of the contract to include liquor liability coverage or to otherwise provide Day coverage.

Day amended her answer to allege bad faith, CPA[4] and IFCA violations, and coverage by estoppel.[5] The amended answer also added Huh as a third-party defendant.

The parties in the personal injury lawsuit reached a settlement in June 2011. MOE paid Lee and Smith $125,000 on Day's behalf. Day agreed to entry of judgments for Lee and Smith against Day totaling $7,986,222. Lee and Smith agreed not to execute on the agreed judgments, except as to Day's claims against Huh. Day assigned Lee and Smith all rights, privileges, claims, and causes of action that she may have against Huh, but retained her claims against MOE. The 2011 settlement included an obligation to fully satisfy the judgments against Day once the claims against Huh were concluded:

> In consideration for the assignment and cooperation as described herein, Plaintiffs do hereby covenant not to execute or attempt to enforce any judgment obtained against any assets of Day other than Day's rights, privileges, claims, and causes of action assigned. Plaintiffs' sole remedy is to pursue the assigned claims against others. As soon as the assigned claims have concluded (whether by settlement, final judgment, or exhaustion of all appeals and the time for further action has expired), Day may enter a full satisfaction of judgment signed by Plaintiffs in favor of Day, which full satisfaction shall be signed by Plaintiffs when this

---

[4] Consumer Protection Act, ch. 19.86 RCW.

[5] See CP at 198 ("MOE failed to advise Day of all developments relevant to coverage, failed to advise her of all developments relevant to her defense, failed to properly handle settlement of the claims against Day, and failed to ascertain the best terms on which the claims against her could be settled.").

settlement is executed. The full satisfaction is to be entered regardless of the amount of any judgment awarded or settlement accepted and regardless whether the result is less than the judgment agreed in this settlement.[6]

The agreement also contemplated a hearing to determine the reasonableness of the settlement.

The trial court dismissed the personal injury lawsuit with prejudice as "fully settled and compromised" including all claims against Day.[7] But the agreed judgments were not entered, there was no reasonableness hearing, and the plaintiffs did not sign and deliver a satisfaction of the agreed judgments to be filed when claims against Huh were resolved.

Lee and Smith, as assignees of Day, later reached a settlement with Huh in the coverage lawsuit. Huh paid Lee and Smith $600,000, and the court dismissed all claims against Huh with prejudice.

Almost a year later, the trial court granted an agreed motion in the personal injury action to reopen "for the limited purpose of permitting the Court to conduct a hearing to determine the reasonableness of the Stipulated Settlements and Judgment amounts in favor of Plaintiffs, William R. Lee and Dawn Smith, against [Day], as was agreed in the Stipulated Settlement among Plaintiffs Lee and Smith and Defendant Day."[8] The trial court also consolidated the personal injury action with the coverage case. The trial court entered an order on June 27, 2014 finding the settlement reasonable and entered the agreed judgments in favor of Lewis and Smith against Day.

---

[6] CP at 305.

[7] CP at 622-24.

[8] CP at 704 (emphasis omitted).

The remaining claims in the coverage case were scheduled for trial. Before trial, the court ruled the jury would determine whether MOE breached its duty of good faith and would assess any damages for Day's emotional distress; the trial judge would decide whether to impose the remedy of coverage by estoppel and whether to reform the insurance contract.

The jury found that MOE's bad faith caused Day emotional distress damages in the amount of $300,000. Based on the IFCA multiplier, the trial court awarded Day an additional $600,000 in damages. The trial court authorized the entry of a supplemental judgment for attorney fees to Day, but no supplemental judgment has been entered.

The trial court denied Day's claim to reform the insurance contract,[9] but applied coverage by estoppel to award Day a judgment against MOE in the amount of the agreed judgments for Lee and Smith, with interest, totaling $10,460,366.14.

MOE appeals. Day cross appeals.

## ANALYSIS

### I. Presumption of Harm and Coverage by Estoppel

MOE argues Day was not entitled to a presumption of harm and coverage by estoppel. For the reasons set forth below, we conclude that even if a presumption of harm applies here, such presumption is rebutted because of the settlement provision to

---

[9] The trial court concluded: "In this case, considering all of the evidence admitted at trial, and in light of the parties extensive briefing on the subject, this Court is persuaded that Ms. Day probably did, at least indirectly, request liquor liability coverage by asking Mr. Huh to write the same policy for her as he had done for Mr. Kim. However, when applying the higher clear, cogent and convincing standard of proof, the Court does not believe the evidence supports reformation. In particular, there is not clear, cogent and convincing evidence of a clear mutual mistake in coverage terms, as opposed to a unilateral mistake on the part of Ms. Day, or potentially no mistake at all if Mr. Huh's version of events is accepted." CP at 2381 (Conclusion of Law 7).

fully satisfy the agreed judgments once the claims against Huh were resolved in any manner. We need not define the exact limits for the presumption of harm and coverage by estoppel in bad faith cases.

An insurer has an "enhanced obligation of fairness toward its insured."[10] That enhanced obligation imposes a duty beyond that of the standard contractual duty of good faith.[11] Tank v. State Farm Fire & Casualty Co. recognized the two forms of bad faith at issue here: "the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries," and "the company has the responsibility for fully informing the insured not only of the reservation of rights defense itself, but of all developments relevant to his policy coverage and the progress of his lawsuit."[12]

In a more traditional covenant judgment, the tort victim takes an agreed judgment against the insured in exchange for a covenant by the tort victim not to execute on any of the insured's assets except the insured's claims against its own insurer, and the insured assigns those claims to the tort victim.[13] Such covenant judgments do not release the insured from liability; rather, they limit recovery to "'a specific asset—the proceeds of the insurance policy and the rights owed by the insurer to the insured.'"[14]

---

[10] Safeco Ins. Co. of Am. v. Butler, 118 Wn.2d 383, 393, 823 P.2d 499 (1992) (quoting Tank v. State Farm Fire & Cas. Co., 105 Wn.2d 381, 383-85, 715 P.2d 1133 (1986)).

[11] Tank, 105 Wn.2d at 387.

[12] 105 Wn.2d 381, 387, 715 P.2d 1133 (1986) (emphasis omitted).

[13] Unigard Ins. Co. v. Mut. of Enumclaw Ins. Co., 160 Wn. App. 912, 919, 250 P.3d 121 (2011).

[14] Besel v. Viking Ins. Co. of Wis., 146 Wn.2d 730, 737, 49 P.3d 887 (2002) (quoting Butler, 118 Wn.2d at 399).

Several cases hold that if the insurer has engaged in bad faith while defending the tort victim's personal injury claim under a reservation of rights, then the tort victim pursuing the assigned bad faith claim against the insurer is entitled to a presumption of harm and coverage by estoppel.

In Safeco Insurance Co. of America v. Butler, our Supreme Court emphasized that harm is an essential element of an action for an insurer's bad faith handling of a claim under a reservation of rights.[15] In order to relieve an insured of the "almost impossible burden" of proving he or she is demonstrably worse off because of the insurer's bad faith, a rebuttable presumption of harm arises once the insured establishes bad faith.[16] Although requiring the insurer to prove the absence of harm is also an "almost impossible burden," the insurer controls whether it acts in good faith; therefore, courts presume harm from an act of bad faith.[17] "'[T]he insurer can rebut the presumption by showing by a preponderance of the evidence its acts did not harm or prejudice the insured.'"[18] If the insurer does not rebut the presumption, the insured is entitled to coverage by estoppel.[19] And if the settlement has been determined to be reasonable, then the amount of the agreed judgment is the presumptive recovery for the tort victim on the assigned bad faith claim.[20]

---

[15] 118 Wn.2d 383, 823 P.2d 499 (1992).

[16] Id. at 390.

[17] Miller v. Kenny, 180 Wn. App. 772, 798-99, 325 P.3d 278 (2014); Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc., 161 Wn.2d 903, 920, 169 P.3d 1 (2007); Butler, 118 Wn.2d at 390-91.

[18] Butler, 118 Wn.2d at 394.

[19] Id. at 393.

[20] See, e.g., Miller, 180 Wn. App. at 800-01; Dan Paulson Constr., 161 Wn.2d at 924-25.

In Coventry Associates v. American States Insurance Co., our Supreme Court held the presumption of harm does not extend to bad faith in first-party coverage settings.[21] The court reasoned that, unlike third-party coverage claims defended under a reservation of rights, there is no potential conflict of interest in first-party scenarios.[22]

Ten years later, in St. Paul Fire and Marine Insurance Co. v. Onvia, Inc., our Supreme Court extended Coventry to a third-party coverage setting where an insurer did not defend under a reservation of rights and bad faith consisted solely of "procedural missteps."[23] Reading Onvia broadly, MOE argues that its failure to promptly investigate Day's claim for reformation and promptly communicate with her about that investigation "[did] not trigger the policy concerns that have led courts to apply" coverage by estoppel.[24] But Onvia rejected a presumption of harm and coverage by estoppel because, as in Coventry, neither a failure to defend nor a defense under a reservation of rights was at issue.[25] The policy concerns the court referred to in Onvia were those that attach when an insurer fails to defend or defends under a reservation of rights,[26] as

---

[21] 136 Wn.2d 269, 281, 961 P.2d 933 (1998).

[22] Id. at 277 ("This issue is one of first impression in the context of a first party action. In the context of a third-party reservation of rights case, once an insured meets the burden of establishing an insurer's bad faith, a rebuttable presumption of harm arises.").

[23] 165 Wn.2d 122, 126 & 133, 196 P.3d 664 (2008) ("[N]o rebuttable presumption of harm can arise here, and the measure of damages offered in Coventry should apply here also. The remedy of coverage by estoppel is not recognized in this context.").

[24] Appellant's Br. at 14.

[25] Onvia, 165 Wn.2d at 133.

[26] Id. ("As in Coventry, a reservation of rights or failure to defend in any capacity is not at issue. Therefore, no rebuttable presumption of harm can arise here, and the measure of damages offered in Coventry should apply here also. The remedy of coverage by estoppel is not recognized in this context.").

9

announced in Butler[27] and acknowledged in Coventry.[28] Onvia did not eliminate the presumption of harm and coverage by estoppel for bad faith claims alleging a failure to investigate. Onvia merely acknowledged that the presumption and coverage by estoppel were not appropriate when the insurer did not fail to defend nor defend under a reservation of rights.[29]

Against this backdrop, we analyze the atypical "covenant judgment" used here. Smith and Lee took agreed judgments of more than $10,000,000 against Day, but unlike a traditional covenant judgment, Day retained her claims against her insurer and assigned only her claim against Huh. The covenant precluded any execution on the agreed judgments except on Day's claims against Huh. And, most importantly, the settlement giving rise to the agreed judgments expressly provided that once the claims against Huh were resolved in any manner, the agreed judgments against Day would be fully satisfied.

Werlinger v. Clarendon National Insurance Co. is instructive.[30] Michael Warner caused a car collision that killed Dean Werlinger. Warner was protected from personal

---

[27] Butler, 118 Wn.2d at 392 ("In Tank we did not address what remedy is available for an insurer's bad faith handling of a claim under a reservation of rights. We now hold that where an insurer acts in bad faith in handling a claim under a reservation of rights, the insurer is estopped from denying coverage.").

[28] Coventry, 136 Wn.2d at 281 ("Because the potential conflict of interest does not exist in the first-party context, we do not think a rebuttable presumption of harm is warranted.").

[29] Onvia, 165 Wn.2d at 133. Day points to Moratti v Farmers Insurance Co. of Washington, 162 Wn. App. 495, 254 P.3d 939 (2011) for the proposition that Butler applies whenever an insurer acts in bad faith, including a failure to investigate. But the significance of Moratti here is limited because, unlike Day's settlement with the tort victims, Moratti involved a traditional covenant judgment where the insured assigned its claims against its insurer to the tort victim.

[30] 129 Wn. App. 804, 120 P.3d 593 (2005).

liability due to a discharge in bankruptcy, but the bankruptcy court allowed the Werlinger estate to sue Warner for the $25,000 limits of his automobile insurance policy with Clarendon National Insurance Company.[31] Clarendon defended under a reservation of rights.[32] In exchange for Warner settling for $5,000,000, the Werlingers agreed not to hold Warner personally liable.[33] Warner assigned the Werlingers their bad faith claims against Clarendon. The Werlingers, as Warner's assignees, filed a bad faith lawsuit against Clarendon, and on motions for summary judgment, the court ruled in favor of Clarendon because "there was no injury to Mike Warner or his marital community."[34] On appeal, this court recognized that the discharge in bankruptcy insulated Warner from any personal liability, rebutting the presumption of harm:

> Werlingers argue that there is a presumption of harm once an insured establishes that the insurer acted in bad faith. Although this is true, the presumption of harm is rebuttable. Clarendon established that there was no harm.[35]

Day attempts to distinguish Werlinger because, unlike here, the insured in Werlinger had filed for bankruptcy before the auto collision and was insulated from liability before the claim had been tendered to the insurer. But that distinction is not compelling. Day's insulation from liability is equivalent to the insured's bankruptcy in Werlinger. When the judgments were entered against Day in 2014, the claim against Huh had been resolved. Under the 2011 settlement agreement, Day was entitled to a full satisfaction of those judgments.

---

[31] Id.

[32] Id. at 807.

[33] Id.

[34] Id. at 807-08.

[35] Id. at 809-10.

Day also argues that this is just another variation on lack of harm arguments rejected in covenant judgment decisions for decades. But unlike the rights created in a traditional covenant judgment, Day's right to full satisfaction of the agreed judgment is unrelated to the resolution of any claims (retained or assigned) against Day's insurer. As a consequence, Day was legally insulated from any exposure based on the agreed judgments.

Other issues are presented, but even assuming that a presumption of harm applies here, such a presumption is rebutted, precluding any application of coverage by estoppel.[36] We reverse the $10,460,366.14 judgment in favor of Day against MOE based on coverage by estoppel.

Because we reverse the judgment based on coverage by estoppel, we need not address MOE's additional arguments related to coverage by estoppel.

## II. Jury Instructions

The coverage trial addressed whether MOE engaged in bad faith by failing to adequately investigate Day's claim and by failing to keep Day advised about that claim.[37] MOE challenges the trial court's refusal to give its proposed instructions on the legal standards related to policy reformation.

---

[36] No reported Washington decision has applied the presumption of harm and coverage by estoppel to award the amount of an agreed judgment between the insured and the tort victim to an insured as damages for a bad faith claim retained by the insured. Because any presumption of harm is rebutted, we need not address that question.

[37] Even without a presumption of harm and coverage by estoppel, an insured is entitled to those damages personal to the insured that resulted from the insurer's bad faith, such as emotional distress damages. Miller, 180 Wn. App. at 787-88.

It appears MOE's challenge is limited to four proposed instructions.[38] Two recite legal standards governing an agent's authority to issue a binder for insurance and the expiration of a binder.[39] One states a written agreement is required to modify the terms of a policy.[40] The last one is based on a Kansas case which provides there is no duty to investigate a claim that a policy should mean something other than its written terms.[41]

Jury instructions are sufficient when they allow parties to argue their theory of the case, are not misleading, and when taken as a whole, inform the jury of the applicable law.[42] We review the trial court's decision whether to give a particular jury instruction for an abuse of discretion.[43] If the trial court's jury instructions are otherwise sufficient, the court does not need to give a party's proposed instruction, though that instruction may be an accurate statement of the law.[44] The trial court may decide which instructions are necessary to "guard against misleading the jury."[45]

MOE focuses on Day's expert testimony regarding when coverage extends beyond a written policy, when an agent has "binding authority," and whether MOE should have reformed the contract to conclude the claim was covered.[46]

---

[38] MOE did not take formal exception to the refusal to give instructions and did not identify specific proposed instructions in its assignments of error. RAP 10.3(g).

[39] See CP at 1715 & 1731.

[40] See CP at 1716.

[41] See CP at 1719 (citing Jones v. Reliable Sec. Incorporation, Inc., 29 Kan. App. 2d 617, 28 P.3d 1051 (2001)).

[42] City of Bellevue v. Raum, 171 Wn. App. 124, 142, 286 P.3d 695 (2012).

[43] Clark County v. McManus, 185 Wn.2d 466, 470, 372 P.3d 764 (2016).

[44] City of Seattle v. Pearson, 192 Wn. App. 802, 821, 369 P.3d 194 (2016).

[45] Gammon v. Clark Equip. Co., 104 Wn.2d 613, 617, 707 P.2d 685 (1985).

[46] Appellant's Br. at 46.

When arguing the instructions, the parties presented very different versions of the issues before the jury. For example, Day's counsel argued, "We're not trying reformation to the jury. . . . so it would be completely misleading to give them an instruction on reformation that they're not deciding."[47] MOE's counsel asserted that reformation is "the basis of the bad faith claim."[48] The court concluded, "I see the case as being a tort claim related to bad faith, not a contract claim related to reformation," and noted the reformation of the contract was a theory reserved to the trial court.[49]

We agree that the issue whether to reform the contract was reserved to the trial court. It was within the discretion of the trial court to conclude the jury may be misled or confused by instructions focusing on the legal standards governing binders, limits on modifying insurance policies, and no duty to investigate any claim that the policy means something other than its written terms. To the extent MOE suggests a theory that there was no bad faith failure to investigate or advise because, as a matter of law, there could be no reformation of the contract, that was not an issue for the jury.

MOE's arguments are not persuasive. The trial court adequately instructed the jury on the requirements for a showing of bad faith and the elements Day was required to prove to establish bad faith. The trial court focused on the instructions necessary to argue the theories presented.[50] MOE does not establish that the court's instructions were inadequate or that the trial court abused its discretion.

---

[47] RP (Dec. 3, 2014) at 14.

[48] Id. at 16.

[49] Id. at 16-18.

[50] For example, regarding the proposed instruction based on a Kansas case, the court stated, "I'm not willing to add to our growing body of law by importing Kansas law when I believe that the instructions already provide you with an opportunity to argue

We affirm the jury award of emotional distress damages resulting from MOE's bad faith.

### III. IFCA Treble Damage Award

For the first time on appeal, MOE argues that emotional distress damages are not "actual damages" subject to trebling under IFCA.[51] "Failure to raise an issue before the trial court generally precludes a party from raising it on appeal. . . . The reason for this rule is to afford the trial court an opportunity to correct any error, thereby avoiding unnecessary appeals and retrials."[52] Because this issue was not preserved for appeal, we decline to address it.[53]

### III. Contract Reformation

On cross appeal, Day challenges the denial of her claim to reform the insurance contract. She argues the trial court erred as a matter of law and should have inquired "whether clear and convincing evidence of *inequitable conduct* by the insurer deprived the insured of the full benefits of the policy to which she believed she was entitled."[54]

Mutual mistake supporting reformation of a contract must be proved by clear, cogent and convincing evidence, "and if doubts exist as the parties' intent, reformation

---

that: 'We did our investigation. We found that the policy as written was excluding liquor liability coverage. Mr. Huh said it was specifically excluded.' You can make your case without this instruction." RP (Dec. 3, 2014) at 62.

[51] MOE acknowledges it did not raise this argument to the trial court, but asks this court to reach this issue because Schreib v. Am. Family Mut. Ins. Co., 129 F. Supp. 3d 1129 (W.D. Wash. 2015) had not been decided when judgment was entered. However, the Washington authority the court relied on in Schreib was in existence when MOE brought its motion opposing the treble damage award.

[52] Smith v. Shannon, 100 Wn.2d 26, 37, 666 P.2d 351 (1983).

[53] RAP 2.5(a).

[54] Respondent's Br. at 48 (emphasis added).

is not appropriate."[55] "Reformation is an equitable remedy employed to bring a writing that is materially at variance with the parties' agreement into conformity with that agreement."[56] In matters of equity, the trial court has broad discretionary power to fashion an equitable remedy.[57]

Here, the trial court reserved the equitable remedy of contract reformation for the court, not the jury. The parties presented conflicting testimony about Day's intent or desire to purchase liquor liability coverage. The trial court's decision that Day failed to meet the burden of clear, cogent, and convincing evidence was largely a credibility determination.

Our review of the record does not reveal that Day offered a separate theory of reformation based on "inequitable conduct." We decline to consider this theory raised for the first time on appeal.

We conclude the trial court did not commit an error of law, rely on insufficient evidence, or abuse its discretion when it concluded that Day had not met her burden of clear, cogent, and convincing evidence.

---

[55] Denny's Rests., Inc. v. Security Union Title Ins. Co., 71 Wn. App. 194, 212, 859 P.2d 619 (1993).

[56] Denaxas v. Sandstone Court of Bellevue, LLC, 148 Wn.2d 654, 669, 63 P.3d 125 (2003).

[57] Arzola v. Name Intelligence, Inc., 188 Wn. App. 588, 596, 355 P.3d 286 (2015).

## IV. Attorney Fees

IFCA authorizes an award of "reasonable attorneys' fees and actual and statutory litigation costs" to the prevailing insured.[58] We award Day her reasonable attorney fees on appeal on the issues she prevailed upon.

## CONCLUSION

We affirm the judgment in favor of Day for $300,000 for emotional distress damages and the $600,000 of multiplied damages under IFCA awarded by the trial court.[59]

We affirm the trial court's denial of Day's claim for contract reformation.

We reverse the judgment in favor of Day against MOE based on coverage by estoppel.

Finally, we award Day her reasonable attorney fees on appeal on the issues she prevailed upon.

WE CONCUR:

---

[58] RCW 48.30.015(2), (3); Trinity Universal Ins. Co. of Kan. v. Ohio Cas. Ins. Co., 176 Wn. App. 185, 201, 312 P.3d 976 (2013); Olympic Steamship Co., Inc. v. Centennial Ins. Co. 117 Wn.2d 37, 52-53, 811 P.2d 673 (1991).

[59] On reconsideration in this court, the parties debate whether a supplemental judgment may yet be entered for Day's attorney fees in the trial court. Because this question was not meaningfully addressed in the parties' briefs, we express no opinion.