# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LISA STEEL, individually and as Guardian ad Litem for J.T., a minor; and DOUGLAS THOMPSON and KRISTI BARBIERI, individually and as Guardian ad Litem for S.R.B., | No. 50981-4-II |
| Petitioners, | |
| v. | |
| OLYMPIC EARLY LEARNING CENTER; STEVE OLSEN, individually; and ROSE HORGDAHL, individually; PHILADELPHIA INDEMNITY INSURANCE COMPANY, intervenor, | UNPUBLISHED OPINION |
| Respondents, | |
| and | |
| AMANDA MYRICK, individually and as Guardian ad Litem for S.A., a minor; NATALIE BOND, individually and as Guardian ad Litem for A.K., a minor; ALICIA MENDOZA, individually and as Guardian ad Litem for M.M., a minor; and G.S.J., individually and as Guardian ad Litem for J.J., a minor, | |
| Plaintiffs. | |

MELNICK, P.J. — Lisa Steel, Douglas Thompson, and Kristi Barbieri, as individuals and as guardians ad litem for their minor children (collectively, Petitioners), and a number of other

plaintiffs[1] sued Olympia Early Learning Center (OELC) and its owner, Steve Olson, as well as one of its employees, Rose Horgdahl (collectively, the Insureds) after they learned that an OELC employee sexually abused minors in his care. The parties settled and entered into covenant judgments. As such, the plaintiffs agreed not to execute the judgments against the Insureds. In exchange, the Insureds agreed to assign the plaintiffs their bad faith claims against their insurance company, Philadelphia Indemnity Insurance Company (Philadelphia).

The plaintiffs and the Insureds agreed that the superior court would hold a reasonableness hearing. Philadelphia intervened and, after conducting some discovery, moved to dismiss the Petitioners. The superior court dismissed the Petitioners and did not hold a reasonableness hearing.

We granted discretionary review on two issues. First, did the trial court err by dismissing Petitioners? Second, did the trial court abuse its discretion in its discovery order, which permitted Philadelphia to conduct numerous depositions?

We conclude that the trial court erred in dismissing the Petitioners. We also conclude that the trial court did not err by allowing some discovery; however, we clarify the parameters of the discovery.[2] We reverse and remand.

---

[1] The other plaintiffs are not involved in this appellate review.

[2] It appears that the trial court's discovery order encompasses all of the plaintiffs and not just those who are involved in this appellate review. We only rule on those involved in this appellate review.

FACTS

I.   BACKGROUND

An employee of OELC sexually abused minors in his care.  The employee admitted to and was convicted of child rape and child molestation against two children who attended OELC.  A number of minors and their parents sued, including the Petitioners.

Philadelphia insured OELC under a policy which provided limited Sexual or Physical Abuse or Molestation Vicarious Liability coverage.

The court set trial for October 2012.  Between December 2011 and August 2012, the plaintiffs proposed settlement offers to Philadelphia valued at approximately $4 million.

On September 20, the plaintiffs and Insureds settled, and executed 12 separate settlement agreements (the Agreements).  The Agreements totaled $25 million.  The plaintiffs' attorney drafted the Agreements.

The relevant parts of the Agreements are identical.  They provide:

> 1.  <u>Amount</u>.  Subject to the provisions of paragraphs 2, 3, and 4, Plaintiffs agree to settle the claims against Defendants, for entry of a judgment in the principal amount of [settlement amount] without costs or attorney's fees, against [the Insureds] and in favor of Plaintiffs.
> 2.  <u>Stipulated Judgment</u>.  Defendants shall stipulate to a judgment in favor of Plaintiffs in the principal amount of [settlement amount] . . . .  Should a court determine that an amount other than the amount of the stipulated judgment is a reasonable settlement amount, Plaintiffs and Defendants agree to stipulate to . . . that amount . . . .  Defendants agree that the [settlement amount] is reasonable and will argue in favor of reasonableness to the extent necessary hereafter, including, but not limited to, participation in a judicial reasonableness hearing and related hearings.
> 3.  <u>Covenant Not to Execute</u>.  Plaintiffs hereby irrevocably covenant and agree not to execute the judgment against [the Insureds].
> 4.  <u>Assignment of Claims</u>.  Defendants shall assign Plaintiffs any and all their rights against Philadelphia Indemnity Insurance Company and all related insurance companies . . . .
> 5.  <u>Release</u>.  Upon full execution of this Agreement by all parties, Plaintiffs forever release and discharge Defendants from any and all of Plaintiffs' claims,

3

causes of action, damages, debts, expenses, costs, attorneys' fees, and other taxable costs, and any other demands of whatsoever kind, nature or description, whether past, present or future, known or unknown, and based on acts or omissions which are alleged or could have been alleged in the lawsuit.

. . . .

7. Dismissal. Not less than 30 days after the effective date of this agreement, the parties to this agreement shall file a stipulation and order for dismissal of all claims of Plaintiffs against Defendants. The order of dismissal shall, however, state that the Court will retain jurisdiction for the purposes of conducting a fairness hearing and any related hearings unless such hearings occur before the dismissal. Additionally, the dismissal will not extinguish or in any way impede the legal effect of the judgment . . . . The judgment will remain active subject to the covenant not to execute described in paragraph 3 above.

Clerk's Papers (CP) at 834-35; *see also* CP at 858-59, 880-81, 990-91. As part of the Agreements, the Insureds also admitted that the alleged sexual abuse occurred, that the Insureds acted negligently, and that damages resulted.

On September 26, the plaintiffs and Insureds filed a stipulated order to appoint specific Settlement Guardians ad Litem (SGALs) for the minor children, which the court signed.

The plaintiffs then moved for entry of the Agreements and sought a reasonableness hearing. Philadelphia moved to intervene to conduct "focused discovery" on the issue of whether the Agreements were reasonable. CP at 104. The trial court granted Philadelphia's motion.

In November, the trial court heard arguments from the parties regarding the necessity of a reasonableness hearing. The court concluded that a reasonableness hearing was required under RCW 4.22.060. A few weeks later, the court entered a written opinion clarifying its oral ruling that it must hold a reasonableness hearing.

II.    DISCOVERY ORDER

On January 13, 2017, Philadelphia brought a motion to compel the deposition of the Insureds, the Petitioners, and the SGALs. After hearing argument, the court granted the motion but clarified that "such depositions are limited to factors of reasonableness." CP at 3611.

4

Within the next few months, the parties filed numerous motions regarding the scope of discovery. On May 5, concerned with the repeated and ongoing disputes regarding the scope of discovery, the trial court instructed Philadelphia to submit a list of proposed deponents and topics. It ordered that the list include individuals Philadelphia wished to depose and "in general terms, questions that they wish[ed] to ask these witnesses as it relate[d] to the reasonableness factors." Report of Proceedings (May 5, 2017) at 9.

Two weeks later, the court held a hearing regarding Philadelphia's proposed list. The court heard the parties' arguments and then ruled that Philadelphia could conduct numerous depositions. It entered an order regarding who could be deposed and the scope of the depositions.

### III. DISMISSAL ORDER

On March 9, 2017, Philadelphia moved to dismiss the Petitioners. Philadelphia argued that a substantial change in the law occurred and that the trial court's November 2012 ruling requiring a reasonableness hearing should be reconsidered. Specifically, Philadelphia argued that the Agreements completely released the Insureds from liability and insulated the insurer from any obligation to pay. As result, Philadelphia claimed that under *Mutual of Enumclaw Insurance Co. v. Day*, 197 Wn. App. 753, 393 P.3d 786, *review denied*, 188 Wn.2d 1016 (2017), a reasonableness hearing was unnecessary and the court should dismiss the Petitioners.

The court heard argument and then entered a written order dismissing "[a]ll claims of all the [Petitioners] . . . with prejudice." CP at 7852. It agreed with Philadelphia that the Agreements contained a full release. It ruled that it had the authority to revisit and reverse its previous order under CR 60(c).

The court certified both orders under RAP 2.3(b)(4). The Petitioners sought discretionary review, which we granted.

ANALYSIS

I.    TRIAL COURT'S AUTHORITY TO MODIFY PREVIOUS ORDER

The Petitioners argue the trial court committed procedural error when it reversed its November 2012 order. They contend that no procedural tool exists for the trial court to modify that order. We disagree.

In *Chaffee v. Keller Rohrback LLP*, 200 Wn. App. 66, 76, 401 P.3d 418 (2017), the court recognized that "'permitting a trial court to correct any mistakes prior to entry of final judgment serves the interests of judicial economy.'" (Quoting *Alwood v. Harper*, 94 Wn. App. 396, 400-01, 973 P.2d 12 (1999).) Additionally, "the authority of trial courts to revisit interlocutory orders 'allows them to correct not only simple mistakes, but also decisions based on shifting precedent, rather than waiting for the time-consuming, costly process of appeal.'" *Chaffee*, 200 Wn. App. at 76-77 (quoting *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000)); *see also Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 37, 864 P.2d 921 (1993) ("A judge may reverse or modify a pretrial ruling at any time prior to the entry of final judgment.").

Here, the November 2012 written order was not a final order. Therefore, the court had authority to revisit and reverse its previous nonfinal order.[3]

II.    NECESSITY OF A REASONABLENESS HEARING

The parties dispute whether a reasonableness hearing is required. The Petitioners argue that, because the Agreements do not insulate the Insureds from liability, the Agreements are covenant judgments and the statute requires a reasonableness hearing.

---

[3] Although the trial court relied on CR 60 as a basis for its ruling, that rule was inapplicable in this situation.

Philadelphia argues that a reasonableness hearing is unnecessary because the Agreements "fully and unconditionally release[d] the [Insureds] from liability for the claims brought against them." Br. of Resp't at 38. We agree with the Petitioners.

A.      Legal Principles

1.      Reasonableness Hearings Following Covenant Judgments

"An insured may independently negotiate a settlement if the insurer refuses in bad faith to settle a claim. In such a case, the insurer is liable for the settlement to the extent the settlement is reasonable and paid in good faith." *Besel v. Viking Ins. Co. of Wis.*, 146 Wn.2d 730, 736, 49 P.3d 887 (2002). These types of a settlement agreements are called covenant judgments.

Covenant judgments typically involve three features: "(1) a stipulated or consent judgment between the plaintiff and insured, (2) a plaintiff's covenant not to execute on that judgment against the insured, and (3) an assignment to the plaintiff of the insured's coverage and bad faith claims against the insurer." *Bird v. Best Plumbing Grp., LLC*, 175 Wn.2d 756, 764-65, 287 P.3d 551 (2012).

Reasonableness hearings under RCW 4.22.060 apply to covenant judgments. *Bird*, 175 Wn.2d at 767. The statute provides: "A hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence. A determination by the court that the amount to be paid is reasonable must be secured." RCW 4.22.060(1).

"If the amount of the covenant judgment is deemed reasonable . . . , it becomes the presumptive measure of damages in a later bad faith action against the insurer." *Bird*, 175 Wn.2d at 765. If the court determines that a settlement is unreasonable, then it sets a different reasonable

amount, and this amount becomes the presumptive measure of damages in the subsequent bad faith action. *Besel*, 146 Wn.2d at 738.

However, if a reasonableness hearing will have no effect in the subsequent bad faith litigation, i.e., if the amount determined by the court at the conclusion of the hearing will not be used as the presumptive measure of damages in the subsequent bad faith action, the court need not hold a reasonableness hearing. This result rests on the reasoning that the court has no jurisdiction to conduct the hearing because the hearing will have no effect, and thus, there is no justiciable case or controversy. *See Villas at Harbour Pointe Owners Ass'n v. Mut. of Enumclaw Ins. Co.*, 137 Wn. App. 751, 760-61, 154 P.3d 950 (2007).

Therefore, determining whether the Agreements can or cannot be used in the Petitioners' anticipated bad faith litigation against Philadelphia is dispositive in determining whether a reasonableness hearing must be held.

### 2. Bad Faith Litigation

An insurer has a quasi-fiduciary duty to its insureds. RCW 48.01.030; *Cedell v. Farmers Ins. Co. of Wash.*, 176 Wn.2d 686, 696, 295 P.3d 239 (2013). Good faith requires an insurer to deal fairly with insureds. *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 161 Wn.2d 903, 915 n.9, 169 P.3d 1 (2007). To succeed on a bad faith claim against an insurer, the insured must prove a duty, a breach of the duty, and damages proximately caused by the breach of the duty. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485, 78 P.3d 1274 (2003).

When an assigned bad faith claim is brought following a covenant judgment, the assignee can use the amount entered following a reasonableness hearing as the presumptive measure of damages in the bad faith litigation. *Bird*, 175 Wn.2d at 765.

However, an insurer can rebut this presumption by showing that, at the time the court entered the judgment, the insured was legally insulated from liability. *Day*, 197 Wn. App. at 757. If the insurer can make this showing, then the amount found at the reasonableness hearing will not be used as the presumptive measure of damages in the later bad faith litigation. *See Day*, 197 Wn. App. at 759-60, 766.

In *Werlinger v. Clarendon National Insurance Co.*, 129 Wn. App. 804, 807, 120 P.3d 593 (2005), the parties executed a traditional covenant judgment. The parties settled for a monetary amount, the plaintiffs agreed not to hold the insureds personally liable on that amount, and the insureds assigned their bad faith claims against their insurance company to the plaintiffs. *Werlinger*, 129 Wn. App. at 807. However, at the time the parties settled, the insureds were shielded from any personal liability by their bankruptcy status. *Werlinger*, 129 Wn. App. at 809. The court concluded that this insulation rebutted the presumption of harm. *Werlinger*, 129 Wn. App. at 809-10.

In *Day*, the insured entered into a covenant judgment with the plaintiffs. 197 Wn. App. at 759. The agreement only assigned the insured's bad faith claim against her insurance agent, not her insurance provider. *Day*, 197 Wn. App. at 759. The agreement included an obligation to fully satisfy the judgments against the insured once the assigned claims against her insurance agent were resolved. *Day*, 197 Wn. App. at 759. The plaintiffs and insurance agent then settled the assigned bad faith claim. *Day*, 197 Wn. App. at 760. Approximately one year later, the trial court reviewed the plaintiffs and insured's personal injury lawsuit, found the settlement reasonable, and entered the agreed judgments. *Day*, 197 Wn. App. at 760.

In the bad faith claim she retained against her insurance provider, the insured attempted to use the stipulated amount from her original settlement with the plaintiffs as the presumptive amount of damages. *Day*, 197 Wn. App. at 760-61. However, the court recognized that the assigned claims against the insurance agent had already been settled; therefore, under the terms of the agreement, the agreed judgments against the insured were already fully satisfied. *Day*, 197 Wn. App. at 765. "As a consequence, [the insured] was legally insulated from any exposure based on the agreed judgments." *Day*, 197 Wn. App. at 766. The court concluded that this insulation rebutted the presumption of harm. *Day*, 197 Wn. App. at 766.

Based on the above, determining whether the Insureds here are legally insulated from liability is dispositive to the issue of whether the trial court must conduct a reasonableness hearing. This issue is resolved by looking to the language of the Agreements.

### 3. Contract Interpretation

We interpret settlement agreements in the same way as other contracts. *McGuire v. Bates*, 169 Wn.2d 185, 188, 234 P.3d 205 (2010). The primary objective of contract interpretation is to ascertain the mutual intent of the parties at the time they executed the contract. *Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wn.2d 274, 282, 313 P.3d 395 (2013). Washington follows the "objective manifestation theory" of contract interpretation, under which the focus is on the reasonable meaning of the contract language to determine the parties' intent. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). "We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Hearst*, 154 Wn.2d at 504. We view the contract as a whole, interpreting particular language in the context of other contract provisions. *See Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 669, 15 P.3d 115 (2000).

10

We also attempt to interpret contractual language in a way that gives effect to all provisions. *Realm, Inc. v. City of Olympia*, 168 Wn. App. 1, 5, 277 P.3d 679 (2012).

A contract provision is ambiguous if its meaning is uncertain or is subject to two or more reasonable interpretations. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 713, 334 P.3d 116 (2014). "We generally construe ambiguities against the contract's drafter." *Viking Bank*, 183 Wn. App. at 713.

B.      The Agreements

The Agreements here are contracts. Viewing the Agreements as a whole, it is clear that the parties intended to enter into valid and enforceable covenant judgments. This intent is evidenced by the Agreements' provisions requiring the Insureds' participation at a reasonableness hearing, because such hearings are mandatory when parties enter into valid covenant judgments. RCW 4.22.060(1); *Bird*, 175 Wn.2d at 767. Additionally, the Agreements contain the three main features that *Bird* described of covenant judgments: "(1) a stipulated or consent judgment between the plaintiff and insured, (2) a plaintiff's covenant not to execute on that judgment against the insured, and (3) an assignment to the plaintiff of the insured's coverage and bad faith claims against the insurer." 175 Wn.2d at 764-65.

The plain language of the release provision supports this interpretation. The release provision contemplates release only upon "full execution" of the Agreements. "Execute" is defined as: "To perform or complete (a contract or duty)." BLACK'S LAW DICTIONARY 609 (8th ed. 2004). Because the Agreements contain provisions contemplating future action by the Insureds, the Petitioners do not release the Insureds until those future duties are performed.

11

Finally, this interpretation gives effect to all provisions in the Agreements. On the other hand, accepting Philadelphia's argument that the release was effective on signing would render numerous provisions meaningless.

Therefore, because the releases here are contingent on the parties' performance, the Insureds are not yet legally insulated from liability, the court erred in dismissing the Petitioners, and a RCW 4.22.060 reasonableness hearing is required.

III.  DISCOVERY ORDER[4]

The Petitioners argue that the trial court abused its discretion because the discovery order allowed Philadelphia to collect information that was not known to the parties at the time of settlement. Because Philadelphia has conceded that it only seeks information known to the parties at the time of settlement, we disagree.

We review a trial court's discovery order for an abuse of discretion. *Cedell*, 176 Wn.2d at 694. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Cedell*, 176 Wn.2d at 694. A court necessarily abuses its discretion when basing its decision on an erroneous view of the law or applying an incorrect legal analysis. *Dix v. ICT Grp., Inc.*, 160 Wn.2d 826, 833, 161 P.3d 1016 (2007).

CR 26 allows discovery regarding any nonprivileged matter relevant in actions to determine the reasonableness of a settlement. *Steel v. Olympia Early Learning Ctr.*, 195 Wn. App. 811, 822, 381 P.3d 111 (2016). If information is relevant, "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." CR 26(b)(1).

---

[4] We iterate that to the extent the discovery order involves parties other than the Petitioners, this opinion is inapplicable to them.

In determining the reasonableness of a settlement, the trial court is to consider the nine factors outlined in *Glover v. Tacoma General Hospital*, 98 Wn.2d 708, 717, 658 P.2d 1230 (1983), *abrogated on other grounds by Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 756 P.2d 717 (1988). *Bird*, 175 Wn.2d at 766. No single *Glover* factor controls, and all nine factors are not necessarily relevant in all cases. *Besel*, 146 Wn.2d at 739 n.2.

Philadelphia concedes that information is only relevant if it "was known by the parties at the time of settlement." Br. of Resp't at 25. Philadelphia concedes that newly discovered information post-settlement is irrelevant. Wash. Court of Appeals oral argument, *Steel v. Olympia Early Learning Ctr.*, No. 50981-4-II (Apr. 2, 2019), at 20 min., 35 sec. through 21 min., 33 sec. (on file with court).

Thus, the crux of the parties' dispute is whether pre-settlement knowledge obtained after settlement is relevant. We conclude that it can be. In so ruling, we do not intend to limit the trial court's ability to set the parameters of discovery except as follows. The discovery can only involve information known to at least one of the parties at the time of the settlement. It cannot be for privileged information or information otherwise undiscoverable. It must take into consideration the *Glover* factors.

Because this case is before us on interlocutory review, we cannot, with certainty, speculate as to other discovery issues that may arise. We leave it to the discretion of the trial court to follow the court rules on discovery and the case law that governs discovery.

We reverse the trial court's order dismissing the Petitioners. We remand for the trial court to direct discovery in accordance with this opinion and hold a reasonableness hearing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, P.J.

We concur:

_____
Sutton, J.

_____
Glasgow, J.