# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CRISTINA P. ANDERSON, | No. 60382-9-II |
| Appellant, | |
| v. | |
| FARMERS INSURANCE COMPANY OF WASHINGTON; FARMERS INSURANCE EXCHANGE; MID-CENTURY INSURANCE, | PUBLISHED OPINION |
| Respondents, | |
| and | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; WENDY C. GIBSON and J. DOES, | |
| Defendants. | |

CRUSER, C.J. – Cristina Anderson was injured by Wendy Gibson in a pedestrian-vehicle accident. Anderson sued Gibson, and Gibson was represented by an attorney appointed by her insurer, Farmers. A jury returned a $21 million verdict in favor of Anderson. Gibson then declared bankruptcy, and Anderson purchased Gibson's claims against Farmers from the bankruptcy trustee. Anderson subsequently brought several claims against Farmers, some of which were related to Gibson's trial counsel's alleged legal malpractice. Farmers moved under CR 12(b)(6) to dismiss Anderson's complaint, arguing that Washington law prohibited the assignment of legal

malpractice claims to an adversary in the same litigation that gave rise to the legal malpractice claim. The trial court granted the CR 12(b)(6) motion and dismissed Anderson's complaint.

Anderson argues that the trial court erred in granting the CR 12(b)(6) motion and dismissing her complaint because: (1) the prohibition on the assignment of legal malpractice claims established in *Kommavongsa v. Haskell*,[1] does not apply to claims arising from Gibson's trial counsel's alleged legal malpractice that Anderson acquired in the bankruptcy sale because the claims were acquired in an involuntary, post-verdict bankruptcy proceeding and the same public policy limitations on the voluntary assignments of legal malpractice claims do not apply; (2) the prohibition on the assignment of legal malpractice claims does not apply to the claims Anderson acquired in the bankruptcy sale that were not legal malpractice claims; and (3) the prohibition on the assignment of legal malpractice claims does not apply to Anderson's independent claims.

Farmers contends that any claims arising from Gibson's trial counsel's legal malpractice are barred under *Kommavongsa* and that public policy prohibits the assignment of these claims to Anderson even if they were involuntary, post-verdict transfers obtained in a bankruptcy proceeding. Farmers also argues that even if Anderson raised claims that were not related to Gibson's counsel's alleged malpractice, those remaining claims cannot stand because Gibson's bankruptcy shielded her from harm. In addition, Farmers argues that the trial court decided the motion as a summary judgment motion under CR 56 rather than as a CR 12(b)(6) motion.

We hold that the trial court decided the motion as a CR 12(b)(6) motion. We further hold that (1) the trial court did not err in dismissing Anderson's acquired claims that arose from Gibson's trial counsel's alleged legal malpractice claims because *Kommavongsa* applies to legal

---

[1] 149 Wn.2d 288, 67 P.3d 1068 (2003).

malpractice claims that are acquired through involuntary bankruptcy proceedings; (2) the trial court erred in dismissing Anderson's acquired claims that were not legal malpractice claims because *Kommavongsa* applies only to legal malpractice claims; (3) the trial court erred in dismissing Anderson's independent claims because these claims are not assignments of claims arising from legal malpractice subject to the limitations in *Kommavongsa*; and (4) Gibson's bankruptcy did not shield her from harm and prevent her from pursuing her remaining claims. Accordingly, we affirm in part and reverse in part and remand this matter to the trial court for further proceedings.

## FACTS[2]

### I. BACKGROUND

A. Accident and Verdict

In 2019, Anderson was crossing a street in Sumner, Washington, when she was struck by a vehicle driven by Gibson. Anderson suffered severe injuries. Anderson filed a complaint alleging negligence claims against Gibson and the City of Sumner.

At the time of the accident, Gibson was insured by Farmers Insurance Company and/or Mid-Century Insurance Company (Farmers) for $25,000 of liability protection. Farmers assigned counsel to defend Gibson. According to Anderson, Gibson's assigned trial counsel was a Farmers "employee[ ]." Clerk's Papers (CP) at 26.

Anderson settled with the City of Sumner shortly before trial. In August 2023, a jury returned a $21 million verdict against Gibson. After the jury's verdict, Gibson refused Anderson's request to assign Gibson's claims against her insurer to Anderson.

---

[2] The facts and events described below are undisputed unless otherwise noted.

B. Motion to Amend First Amended Complaint

Shortly after the verdict, Anderson moved to amend her complaint. She sought to

> add her own insurance company, State Farm Mutual Insurance Company . . . , and Defendant Gibson's liability insurer(s), Farmer Insurance Company and/or Mid-Century Insurance Company, and to assert contract, statutory and common law claims against both insurers, including for declaratory relief, garnishment, breach of contract, [Consumer Protection Act (CPA)], [Insurance Fair Conduct Act (IFCA),] insurance bad faith, negligence and other related claims.

*Id.* at 1. Anderson did not name Gibson's trial counsel as a defendant.

Farmers opposed Anderson's motion to amend. It argued that Anderson did not have standing to sue Farmers because she was not in privity of contract with Farmers and that Washington law prohibited a third party from asserting a direct claim against a tortfeasor's liability insurer.

The trial court granted Anderson's motion to amend her complaint.[3]

C. Bankruptcy and Sale of Legal Claims

Before Anderson filed her amended complaint, Gibson filed for Chapter 7 bankruptcy. Anderson's case against Gibson was automatically stayed.

During the bankruptcy proceedings, the bankruptcy trustee acquired all of Gibson's potential legal claims. With the bankruptcy court's approval, "[t]he trustee sold all the acquired claims to" Anderson. *Id.* at 27. The bankruptcy stay was lifted in March 2024.

D. Second Amended Complaint

After Anderson's purchase of Gibson's potential claims against Farmers and after the bankruptcy stay was lifted, Anderson filed her second amended complaint.

---

[3] The parties do not challenge this decision.

She alleged that Farmers was Gibson's insurer and that Farmers was required to handle the liability claims for indemnity and/or defense of Gibson.[4] Anderson further alleged that Farmers was responsible for the acts, omissions, or liabilities of the attorneys and adjusters it employed and assigned to Gibson's case and that it had vicarious liability for their acts. Anderson also alleged that Farmers handled Gibson's "liability claims for indemnity and defense through adjusters and attorneys who were employed by or agents of one or more of the Farmers defendants, despite the conflicts of interest." *Id.* at 26.

In addition, Anderson alleged that Farmers, in its own right, failed to protect Gibson's interests in various ways and that this resulted in the $21 million verdict against Gibson. Specifically, in paragraph 3.10 of her general facts section, Anderson alleged:

> In the defense of insured Gibson, the assigned Farmers' agents agreed Plaintiff was fault free and that Ms. Gibson was at least partially at fault. While she had limited liability coverage for indemnity, Ms. Gibson had unlimited coverage for defense costs. However, the Farmers defendants tried to save themselves money and elevated its own monetary concerns over Ms. Gibson's financial risks. The Farmers defendants did not protect Ms. Gibson's interests, rather exposing her by a lack of good faith negotiations, a failure to blame or cross claim against any other entity (including the City of Sumner), a refusal to contribute to the investigation and pursuit of claims against any other entity, and failed to seek to allocate fault to other entities, amongst other negligence and misconduct. Instead, the Farmers' agents unreasonably chose to act adverse at all times to Plaintiffs and to hide behind or align with others to contest Plaintiff's case and damages.

*Id.* at 26-27.

In paragraph 3.12 of the fact section, Anderson further alleged that

> By law the bankruptcy trustee acquired and controlled all of Ms. Gibson's contract, tort, professional negligence and other insurance misconduct claims, privileges and damages. The trustee stood in the shoes of and acquired by force of law all the rights of Ms. Gibson with regards to those claims, with an obligation to pursue and

---

[4] Anderson also alleged claims against her insurer, State Farm. But these claims are not at issue in this appeal.

litigate them for the benefit of the credits such as [Anderson]. The trustee sold all the acquired claims to [Anderson] following notice to all other creditors, and with approval of the United States Bankruptcy Court.

*Id.* at 27.

In paragraph 3.14 of the fact section, Anderson also alleged,

As a direct and proximate result of the acts, omissions, fault, negligence, recklessness, bad faith, malice, contract breaches, statutory and regulatory violations, and other liability of Defendants, Plaintiff has sustained serious and permanent injuries and damages, including physical, mental, emotional and financial injuries, with a floor of such damages the jury verdict and judgment against Ms. Gibson, along with additional injury, harm, prejudice and damages.

*Id.* at 28.

Anderson then stated the following claims:

4.1     Therefore, Plaintiff brings claims on the insurance contracts, in common law tort and under statutes and regulations for the defendants' fault, professional negligence, contract breaches, statutory and regulatory violations and other misconduct for all economic, noneconomic, enhanced or exemplary damages. This includes but is not limited to actions under the [IFCA] (RCW 48.30.015 *et seq*), the [CPA] (RCW 19.86 *et seq*), the fault statutes (RCW 4.22 *et seq*), under the Declaratory Judgement statutes (RCW 7.24 *et seq*), the Garnishment statutes, and in contract and common law tort for bad faith and negligence, as well as under other applicable state laws.

4.2     Plaintiff also asserts declaratory relief for a determination of rights, duties, application of Washington law, appropriate legal relations and status as injured parties, and as insureds with respective entitlement to coverage and benefits, with benefits and amounts owed and owing, along with the amounts determined as to all general and special damages, economic and non-economic damages, fees, costs, enhanced and exemplary and punitive damages, and all further relief to which she is entitled, including but not limited to application of Washington law and remedies including but not limited to presumptive harm, coverage by estoppel and trebling.

. . . .

4.5     Plaintiff seeks and is entitled to injunctive relief to compel payment and to remedy the harm caused by the insurance defendants and their agents, to

restrain and prohibit them from engaging in further misconduct, and to enforce applicable law.

*Id.* at 28-29.

In its answer, Farmers admitted that Gibson had a policy with Farmers that was underwritten by Mid-Century. Farmers also admitted that it employed defense counsel for Gibson and that it had an agreement with Mid-Century to adjust its claims. Farmers also presented several affirmative defenses, including that the second amended complaint failed to state a claim upon which relief could be granted.

## II. CR 12(B)(6) MOTION

### A. FARMER'S MOTION TO DISMISS

Farmers then moved under CR 12(b)(6) to dismiss Anderson's second amended complaint. Farmers specifically asked the trial court to dismiss the complaint "based on Washington's rules prohibiting the assignment of legal malpractice claims" that were established in *Kommavongsa*.[5] *Id.* at 47. Farmers asserted that the entire complaint was "predicated on legal malpractice claims originating from the underlying suit" and "Washington rules prohibit[ ] the assignment of legal malpractice claims." *Id.* at 47, 52.

That same day, Farmers moved for a protective order to protect it from having to disclose the information Anderson sought in her requests for production and interrogatories. A few days later, Anderson moved to compel discovery. Anderson supported her motion to compel discovery

---

[5] Farmers' motion to dismiss was based solely on its argument that Washington law prohibited the assignment of legal malpractice claims and that all of Anderson's claims were based on Gibson's assigned trial counsel's alleged legal malpractice. Farmers did not argue that Washington law otherwise prohibited the assignment of any of the claims asserted by Anderson.

with a declaration from her counsel Raymond Dearie. In its response opposing Anderson's motion to compel discovery, Farmers submitted a declaration from Gibson's trial counsel.

Anderson also opposed Farmers' motion to dismiss. In her response, she asserted that she was bringing "insurance 'bad faith,' " IFCA, and CPA claims and that she was not basing her claims on Gibson's trial counsel's legal malpractice but, rather, "upon the insurers' well-established and non-delegable duties to provide good faith settlement, indemnity, and defense." *Id.* at 306-08. Anderson also argued that an insurer is liable for the negligence of an assigned insurance defense attorney who is performing nondelegable good faith duties and that this was particularly true if the attorney was a full-time employee of the insurer.

Anderson further argued that even if her claims were based on legal malpractice claims, the rule precluding the assignment of such claims pronounced in *Kommavongsa* did not apply because Gibson's claims were not voluntarily assigned to Anderson. She contended that an involuntary transfer of post-trial claims and privileges through a bankruptcy sale was permitted.

Anderson referred the trial court to the Dearie declaration that was attached to her motion to compel. Anderson used the information from the Dearie declaration to support her factual description of the sale of Gibson's rights by the bankruptcy trustee and Farmers' reaction to the sale.

Farmers replied that it did not dispute that it had the duty to defend, settle, and indemnify Gibson. But, focusing on paragraph 3.10 of the fact section in the second amended complaint, Farmers argued that the complaint failed to allege those claims and that, even if Anderson had alleged those claims, they were all dependent on Anderson's barred malpractice claim. Neither

Farmers' CR 12(b)(6) motion nor its reply referred to the Gibson's trial counsel's declaration that Famers had submitted with its opposition to Anderson's motion to compel discovery.

Two days after Farmers filed its reply, the trial court entered the $21 million judgment against Gibson in favor of Anderson.

B. CR 12(b)(6) HEARING

Several days later, the trial court considered Farmers' CR 12(b)(6) motion, Anderson's motion to compel discovery, and Farmers' motion for a protective order.

Farmers asserted that Anderson's claims were based on "bad-faith" allegations against Gibson's counsel. Verbatim Rep. of Proc. (VRP) (Aug. 7, 2024) at 12. Farmers reiterated that under *Kommavongsa* and two cases that applied *Kommavongsa*, *Kenco Enterprises Northwest v. Wiese*, 172 Wn. App. 607, 291 P.3d 261 (2013), and *Kim v. O'Sullivan*, 133 Wn. App. 557, 137 P.3d 61 (2006), Anderson failed to state a claim upon which relief could be granted because Washington law prohibited the "assign[ment] or purchase [of] malpractice claims." *Id.* at 7.

Anderson distinguished the cases that Farmers cited because those cases involved attorney malpractice claims rather than lack of good faith negotiation and failure to provide a defense claims against insurance companies. Anderson also argued that the policy underlying those cases was not present in this case because there was no risk of collusion since this case involved an involuntary, post-verdict transfer and sale and the bankruptcy proceeding had a "cleansing" effect. *Id.* at 19.

During the hearing, Farmers also argued that the trial court should strike Dearie's declaration, which Anderson had cited in her briefing opposing the motion to dismiss, because it was outside the scope of the 12(b)(6) motion and the inclusion of the declaration was an "attempt[ ] to convert [the CR 12(b)(6) motion] to a summary judgment motion, which [was] not before the

[c]ourt." *Id.* at 6. The trial court granted Farmers' motion to strike and did not consider the Dearie declaration. Neither party mentioned Gibson's trial counsel's declaration.

After hearing argument, the trial court orally ruled:

> So we are here on [Farmers'] 12(b)(6) motion to dismiss. The Court is relying on the analysis in the *Kommavongsa*, *Kenco*, and *Kim v. O'Sullivan* cases. It does not make any difference that certain rights were assigned, first to the bankruptcy trustee and later purchased by the plaintiff. Washington law governs that *legal malpractice claims* may not be assigned. Accordingly, the Court is ruling that the *Kommavongsa*, *Kenco*[,] and the *Kim* case still control, and the Court is accordingly granting [Farmers'] 12(b)(6) motion and dismissing this case.

*Id.* at 33 (emphasis added). The trial court later issued a written order granting Farmers' "CR 12(b)(6) Motion to Dismiss" and motion to strike the Dearie declaration and dismissing Anderson's claims. CP at 347.

The trial court did not consider Farmers' motion for a protective order or Anderson's motion to compel because they were moot in light of the CR 12(b)(6) dismissal.

Anderson appeals the order granting the motion to dismiss and dismissing her case.[6]

ANALYSIS

I. LEGAL PRINCIPLES

Notwithstanding the trial court's characterization of its dismissal as pursuant to CR 12(b)(6), Farmers asserts that because the trial court considered matters presented in Gibson's assigned trial counsel's declaration, the trial court treated the motion to dismiss as a summary judgment motion under CR 56 and we must apply the summary judgment standards on review. Anderson responds that the trial court did not consider any facts outside of the second amended

---

[6] Anderson originally sought direct review by our supreme court, but our supreme court denied that request and transferred the appeal to this court.

complaint, so the trial court decided this matter under CR 12(b)(6) and the CR 12(b)(6) standards apply. We hold that the trial court decided this matter under CR 12(b)(6).

"[I]f a superior court considers and does not exclude matters outside the pleadings, [a] CR 12(b)(6) motion must be treated as a motion for summary judgment." *Mason v. Mason*, 19 Wn. App. 2d 803, 820, 497 P.3d 431 (2021).

Gibson's trial counsel's declaration was submitted in support of Farmers' opposition to Anderson's motion to compel, not in support of Farmers' motion to dismiss. And there is no mention of Gibson's trial counsel's declaration in Farmers' CR 12(b)(6) motion or reply or any other indication in the record that the trial court considered this declaration when deciding the CR 12(b)(6) motion to dismiss.

Furthermore, Farmers presented its motion as a CR 12(b)(6) motion and argued that Anderson's complaint should be dismissed because she was legally barred from bringing her claims, not because she failed to establish a question of fact. CP at 47 ("Specifically, [Farmers] requests that the Court dismiss Plaintiff's Second Amended Complaint based on Washington's rules prohibiting the assignment of legal malpractice claims.") Notably, at Farmers' insistence, the trial court struck Anderson's counsel's declaration, which was cited in Anderson's response to the motion to dismiss, specifically because Farmers' motion was a CR 12(b)(6) motion rather than a summary judgment motion.

Because the trial court did not consider facts outside of the complaint and, in fact, precluded Anderson from presenting any facts outside of her complaint, we hold that the trial court dismissed

Anderson's second amended complaint for failure to state a claim under CR 12(b)(6) and apply the CR 12(b)(6) legal principles.[7]

Dismissal under CR 12(b)(6) is appropriate only " 'if the court concludes, beyond a reasonable doubt, the plaintiff cannot prove any set of facts which would justify recovery.' " *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014). (internal quotation marks omitted) (quoting *Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007)). The facts alleged in the complaint must be accepted as true. *Id.* "[I]n determining whether [any set of facts that could justify recovery] exist, a court may consider a hypothetical situation asserted by the complaining party, not part of the formal record, including facts alleged for the first time on appellate review of a dismissal under the rule." *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 750, 888 P.2d 147 (1995) (emphasis omitted). "Neither prejudice nor unfairness is deemed to flow from this rule, because the inquiry on a CR 12(b)(6) motion is whether any facts which would support a valid claim can be conceived." *Id.* at 750.

Dismissal under CR 12(b)(6) " 'should be granted sparingly and with care and only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.' " *J.S. v. Vill. Voice Media Holdings, LLC*, 184 Wn.2d 95, 100, 359 P.3d 714 (2015) (internal quotation marks omitted) (quoting *Cutler v. Phillips Petrol. Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994)). "When an area of the law involved is in the

---

[7] Portions of Farmers' arguments address whether some of Anderson's assertions were supported by the evidence and whether Anderson raised genuine issues of material fact. Because the trial court decided the motion on legal grounds in a CR 12(b)(6) motion, whether Anderson's factual assertions are adequately supported by the evidence is irrelevant. And because this case was not decided on summary judgment, Anderson was not required to establish material questions of fact, and her factual allegations must be taken as true. *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014).

process of development, courts are reluctant to dismiss an action on the pleadings alone by way of a CR 12(b)(6) motion." *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 120, 750 P.2d 254 (1988). We review a dismissal under CR 12(b)(6) de novo. *FutureSelect*, 180 Wn.2d at 962.[8]

## II. ACQUIRED CLAIMS

Anderson argues that the trial court erred when it dismissed all of her acquired claims against Farmers because her acquisition of these claims was barred under *Kommavongsa*. She contends that *Kommavongsa* does not apply to any of her acquired claims because they are not legal malpractice claims and were, instead, claims based on Farmers' own bad faith. Anderson also argues that even if her claims were legal malpractice claims, *Kommavongsa* does not apply because the claims were not voluntarily assigned and the public policy issues present in *Kommavongsa* are not present when a claim is purchased from a bankruptcy trustee with the bankruptcy court's approval.

Farmers argues that the trial court did not err when it dismissed all of Anderson's claims because they were all based on her claim that Farmers is vicariously liable for appointed trial counsel's legal malpractice and *Kommavongsa* prohibits the assignment of such claims.

---

[8] Farmers asserts that Anderson is "raising entirely new justifications for her position for the first time on appeal." Br. of Resp't at 1-2. Farmers appears to assert that in response to the CR 12(b)(6) motion Anderson failed to assert that not all of her claims were based on Gibson's assigned trial counsel's alleged legal malpractice. We disagree. Anderson clearly stated in her opposition to the motion that she was raising claims against Farmers for "insurance bad faith tort and statutory claims." CP at 307. And at the motion hearing she argued that her claims were not entirely based on Gibson's assigned trial counsel's alleged legal malpractice because Farmers itself or its adjusters were likely controlling many aspects of the defense.

To the extent Farmers may also be asserting that Anderson is alleging new facts that could justify recovery, she is permitted to do so. *Bravo*, 125 Wn.2d at 750.

A. *Acquired Legal Malpractice Claims*

Under Washington law, legal malpractice claims are not "assignable to an adversary in the same litigation that gave rise to the alleged legal malpractice." *Kommavongsa*, 149 Wn.2d at 291, 311.

In *Kommavongsa*, the plaintiff-guardians sued the driver of a car for damages on behalf of the injured passengers. 149 Wn.2d at 291-92. The judgment-proof driver allowed the plaintiff-guardians to take a default judgment against him. *Id.* at 292-93. The parties stipulated to the amount of the damages, and the driver assigned to the plaintiff-guardians his legal malpractice claim against the attorney assigned by his insurer and agreed to help the plaintiff-guardians pursue the malpractice claim. *Id.* at 293. In exchange, the plaintiff-guardians agreed not to execute on the judgment against the driver. *Id.* at 293.

On appeal, the supreme court characterized the issue it was addressing as the "narrow question" of "[w]hether a legal malpractice claim is assignable to an adversary in the same litigation that gave rise to the alleged legal malpractice." *Id.* at 291. The court expressly declined to address "the broader issue of whether legal malpractice claims may be assignable in other circumstances." *Id.*

The court acknowledged that, subject to certain exceptions, "[t]he traditional test for assignability of a cause of action in Washington is . . . [whether] . . . 'the cause of action survive[s] to the personal representative of the assignor.' " *Id.* at 295 (quoting *Cooper v. Runnels*, 48 Wn.2d 108, 110, 291 P.2d 657 (1955)). Generally, if the cause of action would survive, the action is assignable. *Id.* at 295. But the court acknowledged that "even where assignability is the general rule, some 18 jurisdictions have held that public policy considerations dictate a different rule for

legal malpractice claims." *Id.* at 295-96. After noting that malpractice claims against other professionals are generally assignable, the court held that this was not the case when the assignment was of a legal malpractice claim to the adversary in that same case. *Id.* at 311.

In reaching this conclusion, the court examined the public policy concerns articulated in several cases from other states in which the courts had concluded that legal malpractice claims are not assignable to an adversary in the same litigation. *Id.* at 296-306. The *Kommavongsa* trial court rejected two of the public policy concerns upon which other courts relied to impose the limitation on assignment. Specifically, the court concluded that the risk of compromising the attorney-client relationship and the risk that permitting such assignments would result in the merchandizing of legal malpractice claims, were not valid public policy considerations. *Id.* at 306-07.[9]

But the supreme court held that three public policy concerns justified precluding the assignment of legal malpractice claims to an adversary in the same litigation. *Id.* at 307, 311. The court stated:

---

[9] The court stated,

> We think some of the concerns expressed in the above cases may be overstated. Where a claim of alleged legal malpractice arises, the client believes that the attorney has violated a duty owed to the client; thus the attorney-client relationship has already been severely compromised. *See Hedlund Mfg. Co. v. Weiser, Stapler & Spivak*, 517 Pa. 522, 526, 539 A.2d 357 (1988) ("[w]here the attorney has caused harm to his or her client, there is no relationship that remains to be protected"). Moreover, an attorney may reveal the client's confidences and secrets to the extent that the lawyer reasonably believes it is necessary to establish a claim or defense on behalf of the attorney in a controversy between the attorney and the client. RPC 1.6(b)(2). Although certainly a client who assigns the legal malpractice claim loses control over the lawsuit, and cannot drop the lawsuit upon realizing the full extent of the waiver, the waiver itself is no broader if the claim is assigned than if the client brings the lawsuit himself or herself—the attorney must still preserve those confidences and secrets that are not reasonably necessary to the defense of the claim.

*Kommavongsa*, 149 Wn.2d at 306.

that permitting the assignment of legal malpractice claims to an adversary in the same litigation that gave rise to the legal malpractice claim ought to be prohibited [(1)] because of the opportunity and incentive for collusion in stipulating to damages in exchange for a covenant not to execute judgment in the underlying litigation; (2) because the "trial within a trial" that necessarily characterizes most legal malpractice claims arising from the same litigation that gave rise to the malpractice claim would lead to abrupt and shameless shift of positions that would give prominence (and substance) to the perception that lawyers will take any position, depending upon where the money lies, and that litigation is a mere game and not a search for truth, thereby demeaning the legal profession; and (3) because to permit such assignments would make lawyers hesitant to accept the defense of defendants who are judgment-proof or nearly so, and who are uninsured or underinsured.

*Id.* at 307. The court also concluded that precluding such assignments would "not protect lawyers from the consequences of their own legal malpractice," because their clients would still be able to pursue any potential legal malpractice claim. *Id.* at 311.

Here, Anderson contends that to the extent any of her claims could be considered legal malpractice claims, the *Kommavongsa* limitation does not apply because *Kommavongsa* applies to only voluntary, pre-verdict assignments and her claims were acquired through an involuntary, post-verdict sale through a bankruptcy proceeding. She contends that *Kommavongsa* did not apply to involuntary acquisitions and that even if it did, the public policy issues underlying *Kommavongsa* do not exist in this context.

Farmers responds that Washington law prohibits the acquisition of legal malpractice claims by an adverse party even when the acquisition came through the purchase of the claim from a bankruptcy trustee because the same public policy concerns exist.

16

We hold that *Kommavongsa* applies to the acquisition of legal malpractice claims through bankruptcy proceedings, and that such sales or assignments are prohibited.[10]

Although Washington courts have not addressed this issue, bankruptcy courts, the federal courts, and several state courts have held that although a debtor's legal malpractice claims become part of the bankruptcy estate by operation of bankruptcy law, those claims are not transferrable by the bankruptcy trustee if state law prohibits such transfers because the trustee "does not have greater rights in the property of the estate than the debtor had prior to filing for bankruptcy." *Freeman v. Basso*, 128 S.W.3d 138, 143 (Mo. App. S.D. 2004) ("[B]arring explicit federal preemption, the trustee does not have greater rights in the property of the estate than the debtor had prior to filing for bankruptcy.").[11]

---

[10] The parties do not dispute that Gibson's potential legal malpractice claims became part of the bankruptcy estate by operation of federal bankruptcy law.

[11] *See also Curtis v. Kellogg & Andelson* (1999) 73 Cal.App.4th 492, 504-05, 86 Cal.Rptr.2d 536 (although legal malpractice claims become property of the Chapter 7 bankruptcy estate, the trustee cannot assign or sell such claims because they are not assignable under state law); *Off. of Statewide Health Plan. and Dev. v. Musick, Peeler & Garrett*, (1999) 76 Cal.App.4th 830, 834-35, 90 Cal.Rptr.2d 705 (under state law a Chapter 7 bankruptcy "trustee cannot assign a legal malpractice claim"); *Can Do, Inc. Pension & Profit Sharing Plan & Successor Plans v. Manier, Herod, Hollabaugh & Smith*, 922 S.W.2d 865, 869 (Tenn. 1996) (holding that the assignment of legal malpractice claims is not allowed under Tennessee law and rejecting an assignment made in bankruptcy proceeding); *In re J.E. Marion, Inc.*, 199 B.R. 635, 637-39 (Bankr. S.D. Tex. 1996) (bankruptcy court held that although the debtor's legal malpractice claims could become property of the Chapter 7 bankruptcy estate, state law and policy considerations prohibited the bankruptcy trustee from assigning these claims to a creditor for prosecution).

Although there are cases under Chapter 11 of the bankruptcy code that suggest that federal bankruptcy law may preempt state law prohibitions against assignment, these cases rely on 11 USC § 1123, which is not applicable to Chapter 7 bankruptcies. 11 USC § 103(g); *see In re Fed.-Mogul Glob. Inc.*, 402 B.R. 625, 630 (Bankr. D. Del. 2009). There is no similar provision in Chapter 7.

Anderson cites no Washington authority addressing this question, and, as such, we assume she has found none.[12] We find these federal and other state authorities persuasive and conclude that in order to pursue a legal malpractice claim that was acquired by purchasing those rights from a bankruptcy trustee, Anderson must demonstrate that state law permitted the transfer of those rights.

To that end, Anderson argues that *Kommavongsa* does not apply to involuntary acquisitions through a bankruptcy sale because the public policy concerns underlying an involuntary acquisition are not the same as when an assignment of rights is voluntary. In effect, she is arguing that state law does not prohibit the involuntary transfer of rights to a party opponent through a bankruptcy sale. We disagree.

We recognize that the assignment at issue in *Kommavongsa* was voluntary, and the supreme court expressly stated that it was not addressing whether legal malpractice claims might be assignable under other circumstances. 149 Wn.2d at 291. Additionally, we note that a key policy concern, the opportunity and incentive for collusion, would not apply in the context of an involuntary assignment or acquisition, especially when the assignment or acquisition was through a bankruptcy trustee with the bankruptcy court's approval. *Id.* at 307.

But *Kommavongsa* did not expressly restrict the application of the assignment limitation to voluntary assignments. And two important public policy concerns would remain regardless of whether the assignment was voluntary or involuntary: the fact that the resolution of the underlying legal malpractice allegation would still require a "trial within a trial" that could "lead to abrupt and

---

[12] *State v. Houser*, 30 Wn. App. 2d 235, 280, 544 P.3d 564 (where appellant fails to cite authority supporting a proposition, we may assume appellant diligently searched for such authority but found none), *review denied*, 3 Wn.3d 1015, 554 P.3d 1223 (2024).

shameless shift of positions,"[13] and the risk that assignments would imperil the ability of judgment-proof defendants who are underinsured or uninsured to obtain representation.

Additionally, one of the public policy concerns rejected in *Kommavongsa*, the risk of compromising the attorney-client relationship, would also apply in this context because an involuntary assignment or acquisition of a legal malpractice claim could allow the assignee to pursue a legal malpractice claim even if it were against the client's express wishes and the attorney-client relationship had not yet been compromised.[14] *Gray v. Oliver*, 943 N.W.2d 617, 624 (Iowa 2020). We hold that public policy concerns weigh in favor of applying *Kommavongsa*'s limitation on the assignment of legal malpractice claims to involuntary assignments.

Anderson also contends that acquiring a claim by purchase from a bankruptcy trustee with court approval is different from an assignment because such a sale "is analogous to execution

---

[13] Anderson argues that under the circumstances here there is no risk that any positions would shift because Farmers admitted liability and Gibson knew her liability would exceed her indemnity coverage limits. Anderson misapprehends the nature of the shift in position. In this context, the shift in position occurs because proof of causation in a legal malpractice suit would require "the assignee [to] prove that the judgment it obtained in the underlying proceeding was obtained solely due to the malpractice of litigation counsel in that underlying case, and not because the defendant was indeed liable" for that judgment. *Eagle Mountain City v. Parsons Kinghorn & Harris, P.C.*, 2017 UT 31, ¶ 41, 408 P.3d 322. In this instance there might not be a shift in position with regard to liability, but there certainly could be with regard to damages. In her reply, Anderson also argues that there was no shift in position because she is raising the same claims that the bankruptcy trustee was entitled to make. The shift in position discussed in *Kommavongsa* was the shift between trial and the legal malpractice suit, so this argument is unhelpful.

[14] Anderson also argues that the risk that attorneys would be hesitant to accept the defense of judgment-proof clients also does not apply here because her claims relate to bad faith by Farmers and would actually protect counsel from interference by the insurer. She contends that that her challenges to Farmers' bad faith should make counsel more likely to accept cases if they know that the insurer will be less likely to interfere with the defense. But this argument ignores the fact Anderson is seeking to assert that Farmers is liable for Gibson's trial counsel's representation. If Anderson can bring claims based on counsel's legal malpractice, this public policy concern still exists.

because both transfers are involuntary, post-judgment, and involve independent and neutral participants." Br. of Appellant at 32. She asserts that *Kommavongsa* did not prohibit involuntary transfers and argues that the fact that acquisition of the claim by means of execution is permitted shows that involuntary transfers are permissible.

But execution is permitted not because it is an involuntary, post-judgment transfer but because it is permitted under Washington's broad execution statutes. *Ikuno v. Yip*, 912 F.2d 306, 314-15 (9th Cir. 1990); *see* RCW 6.17.090 ("All property, real and personal, of the judgment debtor that is not exempted by law is liable to execution."). Anderson cites no other authority suggesting that purchasing rights from the bankruptcy trustee is different than assigning those rights in bankruptcy, so we reject this argument. And, as Farmers points out, in at least one case, *Earth Science Laboratories, Inc. v. Adkins & Wondra P.C.*, 246 Neb. 798, 523 N.W.2d 254 (1994),[15] the court applied the same rule in the context of a bankruptcy sale.

Additionally, as Farmers notes, other courts have held that involuntary sale and assignment of legal malpractice claims to the parties to the underlying litigation should be barred because the same public policy concerns apply in the context of an involuntary sale and assignment. *See Kracht v. Perrin, Gartland & Doyle*, 219 Cal.App.3d 1019, 1023-25, 268 Cal.Rptr. 637 (1990) (California's prohibition on assignment of legal malpractice claims applies to both voluntary and involuntary assignments, especially when the assignee is a former adversary); *Gray*, 943 N.W.2d at 621-29 (addressing a sale via a sheriff's levy); *PADRM Gold Mine, LLC v. Perkumpulan Inv.*

---

[15] In *Earth Science Laboratories*, a bankruptcy trustee, with the bankruptcy court's approval, sold and assigned a company's assets, including a legal malpractice action, to a third-party assignee. 246 Neb. at 798. The appellate court held that public policy considerations related to the personal and confidential nature of the attorney-client relationship prohibited the transfer or assignment of such claims by means of a sale and assignment approved by bankruptcy court. *Id.* at 801-02.

*Crisis Ctr Dressel-WBG* 498 P.3d 1073, 1076-81 (Alaska 2021) (addressing writ of execution and holding that involuntary assignments of legal malpractice claims are not allowed under Alaska law based on public policy).

Because we hold that *Kommavongsa*'s limitation on the assignment of legal malpractice claims applies to the sale of a malpractice claim by a bankruptcy trustee, state law prohibited the transfer of the rights to any legal malpractice claims and the trial court did not err when it dismissed the acquired legal malpractice claims.

B. *Acquired Non-Legal-Malpractice Claims*

Anderson argues that the trial court erred when it dismissed her entire second amended complaint because the trial court mischaracterized all of her claims as arising from Gibson's assigned trial counsel's alleged legal malpractice even though some of her claims were based on Farmers' breaches of its own duties. She argues that the limitation in *Kommavongsa* does not apply to these claims.[16] Because some of the claims in the second amended complaint were based on Farmers or its non-legal employee's breach of Farmers' own duties rather than Gibson's assigned trial counsel's malpractice, we agree that the trial court erred in dismissing those claims.[17]

To determine what claims Anderson raised, we must examine Anderson's second amended complaint. Under Washington's liberal pleading rules, complaints must comply with CR 8(a),

---

[16] Farmers does not dispute that *Kommavongsa* does not apply to claims premised on Farmers' own actions.

[17] Anderson's briefing also discussed vicarious liability and the nondelegable duty doctrine. Anderson's appellate counsel clarified in oral argument that these discussions were not separate grounds for liability but were merely to support Anderson's argument that *Kommavongsa* did not apply to her claims. Wash. Ct. of Appeals oral argument, *Anderson v. Farmers Ins. Co.*, No. 60382-9-II (Sept. 5, 2025), at 31 min., 00 sec. through 33 min, 35 sec. (on file with court).

which allows for notice pleading. *State v. LG Elecs., Inc.*, 186 Wn.2d 169, 183, 375 P.3d 1035 (2016). Under notice pleading requirements, the complaint must contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief" and must "adequately inform the defendant of the nature of the plaintiff's claim as well as the legal grounds upon which those claims rest." *Reagan v. Newton*, 7 Wn. App. 2d 781, 801, 436 P.3d 411 (2019) (quoting CR 8(a)).

In her second amended complaint, Anderson alleged that Farmers was "responsible and liable for any act or omission of the *adjusters* and attorneys it assigned to represent or defend M[s]. Gibson." CP at 26 (emphasis added). Anderson also alleged, without reference to the adjusters or attorneys, that Farmers "tried to save [itself] money and elevated its own monetary concerns over Ms. Gibson's financial risks," which would support an insurance bad faith claim.[18] *Id.* We hold that a liberal reading of the complaint establishes that at least some of Anderson's claims were insurance bad faith claims based on *Farmers*' breach of its duty to provide a defense by its own acts or vicarious liability for the acts of the adjusters,[19] not on Gibson's assigned trial counsel's

---

[18] "Insurance bad faith claims require, among other elements, that the *insurer* have acted in its own interest over the insured's interest and that the damages be proximately caused by the insurer's bad-faith actions." *Beasley v. GEICO Gen. Ins. Co.*, 23 Wn. App. 2d 641, 667, 517 P.3d 500 (2022) (emphasis added); *see also* RESTATEMENT OF THE LAW OF LIABILITY INSURANCE § 12(2) (2019) ("An insurer is subject to liability for the harm caused by the negligent act or omission of counsel provided by the insurer to defend a legal action when the insurer directs the conduct of the counsel with respect to the negligent act or omission in a manner that overrides the duty of the counsel to exercise independent professional judgment."). Thus, a bad faith claim is premised on the insurer's actions and not whether appointed trial counsel breached its duty of care to the client.

[19] Farmers contends that case law establishes that Gibson had no direct claims against the adjusters under the CPA. This argument is not helpful to Farmers. *Keodalah* held that the insured cannot file *a direct claim against an adjuster* for breach of the duty of good faith in a CPA. *Keodalah v. Allstate Ins. Co.*, 194 Wn.2d 339, 352, 449 P.3d 1040 (2019). But *Keodalah* expressly acknowledged that the *insurer* may be liable for breaches of this duty by an agent. 194 Wn.2d at 352 n.7. Here, Anderson's claims were against Farmers, not the adjusters, so the fact she could not make any direct claims for bad faith under the CPA against the adjusters is irrelevant.

alleged legal malpractice. For instance, any potential bad faith claim based on Farmers refusal to permit Gibson's trial counsel to hire an investigator despite counsel's professional opinion that an investigator was necessary would be based on the impropriety of Farmers' actions in interfering with the defense, not on whether counsel had breached his duty of care to Gibson.

Anderson's response to the CR 12(b)(6) motion and her argument at the motion hearing further clarifies her claims and supports the conclusion that they were not based entirely on Gibson's trial counsel's alleged legal malpractice. For instance, in her response to the CR 12(b)(6) motion, Anderson stated that her claims arose from *Farmers'* "control of and good faith duties to settle and defend." *Id.* at 308. And she asserted that it was "probable" or "conceivable" that *Farmers* retained control over the settlement, indemnity, and defense decisions in this case despite delegating certain duties to the adjusters and to Gibson's assigned trial counsel. *Id.* at 310.

Similarly, during the motion hearing Anderson argued that additional discovery would disclose the extent to which Farmers retained control over Gibson's trial counsel and the defense. Anderson suggested that Farmers potentially retained control by controlling the information, billing requirements, and whether it authorized defense costs or settlements. These claims are based on Farmers' duties to act in good faith and to provide a defense and its direct involvement or interference in the defense, not Gibson's trial counsel's alleged legal malpractice. Accordingly, we hold that the trial court erred when it dismissed these claims under *Kommavongsa*.[20]

---

[20] In oral argument, Farmers conceded that a bad faith claim could be assigned notwithstanding *Kommavongsa*, but it argued that Gibson did not plead a viable bad faith claim because she was protected by the bankruptcy and could not demonstrate harm.

III. ANDERSON'S INDEPENDENT CLAIMS

Anderson also argues that she raised several "independent" claims that were not dependent on the claims she purchased from the bankruptcy trustee and that the trial court erred in dismissing those claims because they were not assignable under *Kommavongsa*. Br. of Appellant at 25. She states that these claims included "independent claims against Farmers for declaratory judgment regarding coverage, garnishment and collection of the judgment against their insured" and that the limitation in *Kommavongsa* does not apply because they are not legal malpractice claims and they were brought directly by her and not purchased from the bankruptcy trustee. *Id.* at 2. And her second amended complaint and related briefing suggests other independent claims, such as a request for injunctive relief and, possibly, an independent CPA claim.[21]

Farmers contends that these " 'independent' " claims were properly dismissed because they were "derivative of any claims against Farmers or its appointed defense counsel." Br. of Resp't at 12 n.7. Regardless of whether these claims are "derivative" of any legal malpractice claim, Farmers' CR 12(b)(6) motion was premised on the argument that legal malpractice claims are not *assignable*, and Anderson's independent claims were direct claims that did not involve an assignment. Accordingly, we hold that the trial court erred when it dismissed Anderson's independent claims pursuant to Farmers' CR 12(b)(6) motion. We note that on remand, the trial

---

[21] In the reply related to her motion to amend her complaint, Anderson noted that she was bringing a private CPA action against Farmers. No direct or implied consumer relationship is required for a plaintiff to bring a private CPA action. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 39-40, 204 P.3d 885 (2009). Because Anderson filed the motion to amend before she acquired Gibson's claims, Anderson would have been unable to have obtained any CPA claims by assignment or purchase when she filed the motion. But Anderson later stated in her opposition to Farmers' CR 12(b)(6) motion that she was also bringing assigned CPA claims. It is unclear whether Anderson has abandoned any independent CPA claim. Regardless, the issue of whether Anderson had standing to bring the direct CPA and IFCA claims is not before us.

court will need to determine which of Anderson's claims are independent claims based on Farmers' or its agents' direct actions.

## IV. No Bankruptcy Protection

Farmers also contends that under *Werlinger v. Clarendon National Insurance Co.*, 129 Wn. App. 804, 120 P.3d 593 (2005), none of Anderson's remaining claims can stand because the bankruptcy protected Gibson from any harm. We disagree.

In *Werlinger*, the insured had filed a Chapter 13 bankruptcy prior to causing the accident that killed Werlinger. *Id.* at 806. Shortly after the accident, the insured converted the action to a Chapter 7 proceeding, but this conversion was not in response to any action by the insured's insurer. *Id.* Following his discharge in bankruptcy, the insured executed an agreement with Werlinger's estate in which he confessed a $5 million judgment in exchange for the estate's promise not to hold him personally liable. *Id.* at 807. Werlinger's estate, as an assignee, then filed a bad faith and CPA lawsuit against the insured's insurer. *Id.* On summary judgment, the trial court ruled in the insurer's favor after finding there was no injury to the insured. *Id.* at 808. Division One of this court affirmed the summary judgment order, holding that the insured could not demonstrate harm because the insured was shielded from personal liability by the Chapter 7 bankruptcy status. *Id.* at 809.

*Werlinger* can be distinguished on two grounds. First, in *Werlinger* the insured party had declared bankruptcy prior to the accident and converted the bankruptcy to a Chapter 7 bankruptcy prior to any judgment against him to protect against personal liability, so it was clear that the insured was protected against personal liability at the time of the judgment. *Id.* at 806. In contrast, here the verdict preceded the bankruptcy and, in fact, was the likely the cause of the bankruptcy.

25

Second, *Werlinger* addressed a summary judgment decision, and the court concluded that there was no evidence establishing that the insured filed the Chapter 7 bankruptcy as a result of the legal claim. *Id.* at 809. In contrast, this case was dismissed under CR 12(b)(6), and the factual matters underlying the bankruptcy were never examined.

Furthermore, even if bankruptcy can potentially protect against a judgment, there are other damages or harms a bankruptcy can cause such as damage to credit ratings, limiting the bankrupt party's ability to get loans, and emotional damage, which were pled by Anderson. Accordingly, Famers does not demonstrate that the bankruptcy precluded any claims because it eliminated any potential harm to Gibson.[22]

ATTORNEY FEES

Neither party requests attorney fees. But Farmers requests "[c]osts on appeal." Br. of Resp't at 57. We can award costs to the substantially prevailing party. RAP 14.2. Because each party has prevailed in part and there is no substantially prevailing party, we deny costs for both parties.

CONCLUSION

We hold that the trial court did not err in dismissing Anderson's acquired claims arising from Gibson's trial counsel's alleged legal malpractice because *Kommavongsa* applies to legal malpractice claims that are acquired through involuntary bankruptcy proceedings. But the trial court erred to the extent it dismissed Anderson's acquired non-legal-malpractice claims, such as any of Gibson's direct claims against Farmers for bad faith based on Farmer's own actions, and

---

[22] Farmers also relies on *Mutual of Enumclaw Insurance Co. v. Myong Suk Day*, 197 Wn. App. 753, 393 P.3d 786 (2017). Although this case cites *Werlinger*, it is inapposite because it addresses the effect of a covenant judgment, not a bankruptcy. *Day*, 197 Wn. App. at 756, 765-66.

Anderson's independent claims, such as any CPA, declaratory judgment, or garnishment claims that Anderson could assert in her own right,[23] because *Kommavongsa* does not apply to those claims.

Accordingly, we reverse in part and affirm in part and remand for further proceedings consistent with this opinion. On remand, the trial court should clarify which of Anderson's claims are or are not based on Gibson's trial counsel's alleged legal malpractice and address Farmers' motion for a protection order and Anderson's motion to compel because they are no longer moot. We also deny costs as there is no substantially prevailing party.

_____, C.J.
CRUSER, C.J.

We concur:

_____, J.
LEE, J.

_____, J.
PRICE, J.

---

[23] We do not comment on the viability of any of the surviving claims because, apart from Farmers' argument that the bankruptcy prevented harm, the issue of viability of those claims is not before us. In addition, on remand the trial court should have the opportunity to examine Anderson's claims more fully to determine which claims are based on the alleged legal malpractice and which are more properly characterized as either Gibson's non-legal-malpractice claims or Anderson's independent claims.